JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant, Daniel Hines ("Hines"), appeals his conviction for unlawful sexual conduct with a minor and his convictions and sentences for importuning. Finding no merit to the appeal, we affirm.
 {¶ 2} In May 2007, Hines was charged in a multi-count indictment. Count 1 charged him with the unlawful sexual conduct with a minor, Jane Doe I, later amended to reflect her name, D.N.; Counts 2 through 29 charged him with the importuning of D.N.; Counts 30 through 33 charged him with the importuning of a minor, Jane Doe II, later amended to reflect her name, S.S.; and Count 34 charged him with disseminating obscene matter to a juvenile, D.N.
 {¶ 3} The matter proceeded to a jury trial in October 2007, where the following evidence was introduced.[1]
 {¶ 4} In the summer of 2006, D.N. met Hines through a telephone chat line. They exchanged phone numbers and arranged to meet at an abandoned house for D.N. to braid Hines' hair. D.N. continued to braid his hair at least once a week or once every other week. Hines eventually bought D.N. a cell phone, and they began communicating by talking on the cell phone or "texting" *Page 4 
each other every day.[2] Hines would send D.N. text messages ("texts" or "messages") asking her for sex and would also make the same requests while talking on the phone. In addition to sending text messages, they also sent each other pictures of their private parts. Then in April 2007, D.N. agreed to have Hines perform oral sex on her. He came to her house, and her cousin K.N. led Hines to D.N.'s bedroom. Hines performed oral sex on D.N. while she laid on her bed. Afterwards, Hines placed $200 on D.N.'s dresser and gave K.N. $20 as he left.
 {¶ 5} When D.N.'s mother learned about Hines, she called him from D.N.'s cell phone and told him to stay away from her daughter. D.N.'s mother called the Cleveland police to investigate the matter.
 {¶ 6} Hines was also in contact with D.N.'s classmate, S.S., whom D.N. had introduced to Hines through a three-way phone conversation. S.S. and Hines began to text and call each other on a frequent basis. S.S. thought that D.N. and Hines were boyfriend and girlfriend. Hines sent S.S. two text messages asking her for sex. At one point, they made plans to meet at Randall Park Mall, but S.S. never went. S.S. stopped talking to Hines after she asked her grandmother to tell him to stop calling her. *Page 5 
 {¶ 7} The jury found Hines guilty of unlawful sexual conduct with a minor, D.N. (Count 1) and importuning (Counts 2 and 4 through 15 involve D.N., and Counts 30 and 31 involve S.S.). The trial court sentenced him to five years in prison on Count 1 and six months on each of Counts 2, 4 through 15, 30 and 31, to be served consecutive to each other and to Count 1, for an aggregate of 12½ years in prison.[3]
 {¶ 8} Hines appeals, raising three assignments of error for our review.
 Sufficiency of Evidence {¶ 9} In the first assignment of error, Hines argues that there was insufficient evidence to support his importuning convictions.
 {¶ 10} The standard of review for the sufficiency of evidence is set forth in State v. Bridgeman (1978), 55 Ohio St.2d 261, 381 N.E.2d 184, syllabus, which states:
 "Pursuant to Crim. R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."
 {¶ 11} See, also, State v. Apanovitch (1987), 33 Ohio St.3d 19, 23,514 N.E.2d 394; State v. Davis (1988), 49 Ohio App.3d 109, 113,550 N.E.2d 966. *Page 6 
 {¶ 12} Bridgeman must be interpreted in light of the sufficiency test outlined in State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52,678 N.E.2d 541, and State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492. A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the State has met its burden of production at trial. Thompkins. On review for sufficiency, courts are to assess not whether the State's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. Id. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jenks, at paragraph two of the syllabus.
 {¶ 13} In the instant case, Hines was convicted of importuning under R.C. 2907.07(B), which provides:
 "No person shall solicit another, not the spouse of the offender, to engage in sexual conduct with the offender, when the offender is eighteen years of age or older and four or more years older than the other person, and the other person is thirteen years of age or older but less than sixteen years of age, whether or not the offender knows the age of the other person."
 {¶ 14} Hines argues that there was insufficient evidence to show that he was the actual sender of the text messages. He claims that no one was able to testify that he possessed the phone at the time the messages were sent or that he was the one who sent the offending messages. *Page 7 
 {¶ 15} However, we note that proof of guilt may be made by circumstantial evidence, real evidence, and direct evidence, or any combination of the three, and all three have equal probative value.State v. Nicely (1988), 39 Ohio St.3d 147, 529 N.E.2d 1236;Jenks, supra. Moreover, "[c]ircumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof." Jenks, paragraph two of the syllabus. Indeed, "[c]ircumstantial evidence * * * may also be more certain, satisfying and persuasive than direct evidence." State v.Lott (1990), 51 Ohio St.3d 160, 555 N.E.2d 293.
 {¶ 16} Although there was no direct testimony that Hines was the individual who sent the text messages, there was significant circumstantial evidence linking Hines to the offending text messages. The State produced records which revealed that all of the messages were sent from Hines' wireless accounts. When Hines was arrested, Cleveland police recovered the actual cell phone that was used to send the text messages to D.N. (who was 14 years old at the time) and S.S. (who was 13 years old at the time) inside Hines' car. The subscriber account information from Revol Wireless revealed that the seized cell phone and D.N.'s cell phone were both registered to Hines. D.N. testified that Hines paid for the cell phone she used to text or talk with Hines. *Page 8 
 {¶ 17} Furthermore, Hines' cell phone records for March 4, 2007 revealed that he sent seven messages to D.N. proposing sex or asking whether he could perform oral sex on her. On March 5, 2007, he sent D.N. three text messages asking if he could perform oral sex on her. After D.N. affirmatively replied to Hines' text, Hines came to D.N.'s house and performed oral sex on her in her bedroom. At trial, D.N.'s cousin K.N. identified Hines as the individual she led up to D.N.'s room.
 {¶ 18} Hines' cell phone records also reveal that he sent two text messages to S.S. proposing sex. S.S. testified that although she never met Hines, she was on a three-way call with Hines and D.N. In addition, she sent him a text message asking Hines for his full name. Hines texted her back, "Daniel Hines." Furthermore, when Hines asked S.S. for sex, she replied that he was with D.N. Hines told S.S. that D.N. was cheating on him, and he wanted S.S. to be his girlfriend.
 {¶ 19} Thus, we find that the direct and circumstantial evidence in this case, and the reasonable inferences that can be drawn therefrom, were more than sufficient to establish that Hines was the actual sender of the offending text messages.
 {¶ 20} Hines further argues that there was insufficient evidence to demonstrate that the text messages were separate, rather than duplicate *Page 9 
messages being sent more than once because of technical glitches. He claims that this is "especially true where multiple counts were charged for messages being sent minutes apart," such as in Counts 8 through 12 and Counts 13 through 15.
 {¶ 21} In order to be convicted of importuning under R.C. 2907.07(B), the State must prove that Hines solicited someone other than his spouse to engage in sexual conduct with him. R.C. 2907.07(B) does not make a distinction as to whether the solicitations were duplicate or multiple. Rather, the evidence in the instant case demonstrates that Hines persistently badgered D.N. and S.S. for sex.
 {¶ 22} In the instant case, Hines was convicted of importuning in Counts 8 through 12, for sending the following message to D.N.: "Lets have sex then." These five messages were sent by Hines to D.N. within a 31-minute time frame. In Counts 13 through 15, Hines was convicted of importuning for sending the following message to D.N.: "Can i eat you then baby." These three messages were sent within a four-minute time frame.
 {¶ 23} Keith Martin of Revol Wireless testified that these messages may have been sent repeatedly by the Revol server due to some technology glitch. Notably, Martin's testimony established that there was a possibility of a technology glitch, but he never stated that he was certain that these duplicate *Page 10 
messages were the result of a technology glitch. Furthermore, D.N. testified that it was not unusual to send multiple duplicate texts "[b]ecause sometime they drop. They lose. It don't send." She also testified that she had received duplicate texts from Hines on other occasions. Thus, we find that there was sufficient evidence in the record to demonstrate that the text messages were separate.
 {¶ 24} Therefore, in viewing the evidence in the light most favorable to the State, we find that there was sufficient evidence upon which the jury could reasonably conclude that all the elements of importuning were proven beyond a reasonable doubt. See State v. Eley (1978),56 Ohio St.2d 169, 383 N.E.2d 132.
 {¶ 25} Accordingly, the first assignment of error is overruled.
 Manifest Weight of the Evidence {¶ 26} In the second assignment of error, Hines argues that his conviction for unlawful sexual conduct with a minor, D.N., was against the manifest weight of the evidence.
 {¶ 27} In evaluating a challenge to the verdict based on the manifest weight of the evidence in a bench trial, "the trial court assumes the fact-finding function of the jury. Accordingly, to warrant reversal from a bench trial under a manifest weight of the evidence claim, this court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine *Page 11 
whether in resolving conflicts in evidence, the trial court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." Cleveland v.Welms, 169 Ohio App.3d 600, 2006-Ohio-6441, 863 N.E.2d 1125, citingThompkins.
 {¶ 28} As the Thompkins Court declared:
 "Weight of the evidence concerns `the inclination of the greater amount of credible evidence offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' * * *
 "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id.
 {¶ 29} In State v. Bruno, Cuyahoga App. No. 84883, 2005-Ohio-1862, we stated that the reviewing court must be mindful that the weight of the evidence and the credibility of witnesses are matters primarily for the trier of fact. A reviewing court will not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the prosecution proved the offense beyond a reasonable doubt. State v.DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus; Eley. Moreover, in reviewing a claim that a conviction is against the manifest weight of the evidence, the conviction cannot be reversed unless it is *Page 12 
obvious that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Garrow (1995), 103 Ohio App.3d 368,370-371, 659 N.E.2d 814.
 {¶ 30} In the instant case, Hines was convicted of unlawful sexual conduct with a minor under R.C. 2907.04(A), which provides that:
 "No person who is eighteen years of age or older shall engage in sexual conduct with another, who is not the spouse of the offender, when the offender knows the other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard."
 {¶ 31} Hines argues that D.N.'s and K.N.'s testimony was not credible because it was inconsistent. He contends that Moses Marshall was at Hines' house at the time the incident allegedly took place, assisting him with his tax return. However, the jury was in the best position to weigh the credibility of the witnesses and resolve any inconsistencies. See State v. Norman, Cuyahoga App. No. 85903, 2005-Ohio-5979. The fact that D.N. and K.N. had minor inconsistencies in relating what Hines said and describing the clothing he wore when he came to D.N.'s house does not render their testimony totally unreliable. To the contrary, DNA evidence revealed that Hines' saliva was found on D.N.'s bed sheets. Furthermore, Hines' cell phone records revealed that he repeatedly propositioned D.N. for sex or asked her if he could perform oral sex on her. D.N. testified that Hines, who was 28 years old, came to her house and "licked the part of her body where she urinates." Therefore, we cannot find that the jury *Page 13 
"lost its way" and created such a manifest miscarriage of justice that Hines' conviction must be reversed and a new trial ordered.
 {¶ 32} Accordingly, the second assignment of error is overruled.
 Ineffective Assistance of Counsel {¶ 33} Hines argues in the third assignment of error that trial counsel was ineffective for failing to request that Counts 6 through 12, 13 through 15, and 30 and 31 be merged as allied offenses.
 {¶ 34} In a claim of ineffective assistance of counsel, the burden is on the defendant to establish that counsel's performance fell below an objective standard of reasonable representation and prejudiced the defense. State v. Bradley (1989), 42 Ohio St.2d 136, 538 N.E.3d 373, paragraph two of the syllabus; Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674.
 {¶ 35} Hence, to determine whether counsel was ineffective, Hines must show that: (1) "counsel's performance was deficient," in that "counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment," and (2) counsel's "deficient performance prejudiced the defense" in that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland.
 {¶ 36} In Ohio, a properly licensed attorney is presumed competent.Vaughn v. Maxwell (1965), 2 Ohio St.2d 299, 209 N.E.2d 164. In evaluating whether a petitioner has been denied the effective assistance of counsel, the Ohio Supreme *Page 14 
Court held that the test is "whether the accused, under all the circumstances, * * * had a fair trial and substantial justice was done."State v. Hester (1976), 45 Ohio St.2d 71, 341 N.E.2d 304, paragraph four of the syllabus. When making that evaluation, a court must determine "whether there has been a substantial violation of any of defense counsel's essential duties to his client" and "whether the defense was prejudiced by counsel's ineffectiveness." State v. Lytle (1976),48 Ohio St.2d 391, 358 N.E.2d 623; State v. Calhoun, 86 Ohio St.3d 279,1999-Ohio-102, 714 N.E.2d 905. To show that a defendant has been prejudiced, the defendant must prove "that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." Bradley, paragraph three of the syllabus; Strickland.
 {¶ 37} Hines argues that counsel's performance was deficient in failing to raise the issue of allied offenses and merger. He claims that his importuning convictions in Counts 6 through 12, 13 through 15, and 30 through 31 should merge as allied offenses because the text messages were part of a "continuing act that [was] committed in the form of a conversation or dialogue." As a result, he claims that counsel's deficient performance resulted in a longer sentence.
 Merger of Allied Offenses {¶ 38} R.C. 2941.25, Ohio's multiple-count statute, provides that:
 "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may *Page 15 
contain counts for all such offenses, but the defendant may be convicted of only one.
 "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."
 {¶ 39} In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), the Ohio Supreme Court has generally applied the following two-step test: "`In the first step, the elements of the two crimes are compared. If the elements of the offenses correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import and the court must proceed to the second step. In the second step, the defendant's conduct is reviewed to determine whether the defendant can be convicted of both offenses. If the court finds either that the crimes were committed separately or that there was a separate animus for each crime, the defendant may be convicted of both offenses.'" (Emphasis in original.) State v. Brown, 119 Ohio St.3d 447,2008-Ohio-4569, 895 N.E.2d 149, ¶ 19, citing State v. Cabrales,118 Ohio St.3d 54, 2008-Ohio-1625, 886 N.E.2d 181, ¶ 14, quoting State v.Blankenship, 38 Ohio St.3d 116, 117, 526 N.E.2d 816.[4] See, also,State v. Winn, Slip Opinion No. 2009-Ohio-1059. *Page 16 
 {¶ 40} In the instant case, the elements of the importuning offenses are identical, so we must determine whether the importuning charges were committed separately or with a separate animus.
 {¶ 41} Hines contends that Counts 6 through 12 should merge because the texts were sent within an hour time span. He further contends that Counts 13 through 15 should merge because those texts were sent within a four-minute time frame and Counts 30 and 31 involve texts sent within five minutes of each other. He claims that these texts do not represent separate and distinct acts; rather, they are part of the same conversation. Therefore, he claims that these text messages cannot properly be the basis for separate convictions. We disagree.
 {¶ 42} This court recently addressed an analogous situation inState v. Blanchard, Cuyahoga App. No. 90935, 2009-Ohio-1357. InBlanchard, the appellant argued that the trial court erred by failing to find that his pandering charges were allied offenses of similar import and merge his convictions for sentencing. Blanchard pled guilty to 15 counts of pandering sexually oriented matter involving a minor. He argued that the photos that were the subject of his charges were taken in quick succession and not separate, distinguishable offenses. In finding that the trial court did not err by failing to merge the pandering charges, this court held that "the mere *Page 17 
fact that the crimes occurred in quick succession * * * does not mean that they were not committed separately or with separate animus." Id. at ¶ 12.
 {¶ 43} Moreover, the United States District Court for the District of Maryland in U.S. v. Matthews (June 29, 1998), 11 F.Supp.2d 656, explicitly rejected a defendant's argument that four emails containing child pornography sent within a 40-minute time frame should not have been charged as separate offenses because they were part of a conversation. The court reasoned that "a single email transmission is analogous to a single envelope placed in a mailbox. When a person attaches child pornography to an email message and sends it through the phone wire, that person has just transported child pornography. If the person decides to send another message a minute later and attaches another picture, that is a separate act of transportation, regardless of the brief interval of time between transmissions and regardless of whether the transmissions are part of a single `conversation.'" Because [Section 2252(a)(1), Title 18, U.S. Code] focuses on acts of transportation, the court concluded that the defendant may be charged with a separate count for each email transmission.[5]
 {¶ 44} Likewise, in the instant case, R.C. 2907.07 focuses on the solicitation of another to engage in sexual conduct, regardless of whether the solicitations *Page 18 
are part of a single conversation. Therefore, we find that each text was committed separately or with separate animus and, thus, counsel was not ineffective for failing to request that these counts be merged as allied offenses.
 {¶ 45} Accordingly, the third assignment of error is overruled.
 {¶ 46} Judgment is affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, J., AND LARRY A. JONES, J., CONCUR
[1] Prior to opening statements, the trial court dismissed Counts 16 through 29 and Counts 32 through 34.
[2] Hines initially bought D.N. a prepaid cell phone, but later bought her a cell phone from Revol Wireless.
[3] The trial court also classified Hines as a sexual predator.
[4] The Cabrales Court clarified the allied offense test set forth inState v. Ranee, 85 Ohio St.3d 632, 1999-Ohio-291, 710 N.E.2d 699, by holding that: "[i]n determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), courts are required to compare the elements of offenses in the abstract without considering the evidence in the case, but are not required to find an exact alignment of the elements. Instead, if, in comparing the elements of the offenses in the abstract, the offenses are so similar that the commission of one offense will necessarily result in commission of the other, then the offenses are allied offenses of similar import." Id., paragraph one of the syllabus.
[5] To be convicted under the statute, Section 2252(a)(1), Title 18, U.S. Code, requires that the defendant knowingly transport or ship the visual depiction, and that Section 2252(a)(2) explicitly requires that the defendant knowingly receive or distribute the visual depiction. *Page 1