[Cite as *Swayze v. Firestone Complete Auto Care*, 2012-Ohio-2111.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

DAVID SWAYZE                                  :

     Plaintiff-Appellant                 :            C.A. CASE NO.    24983

v.                                            :            T.C. NO.    10CVF5335

FIRESTONE COMPLETE AUTO CARE        :            (Civil appeal from
                                                           Municipal Court)

     Defendant-Appellee                  :

                                              :

· · · · · · · · · ·

**O P I N I O N**

Rendered on the ___11th___ day of ___May___, 2012.

· · · · · · · · · ·

EDWARD J. DUFFY, JR., Atty. Reg. No. 0018980, 32 N. Dixie Drive, P. O. Box 76, Vandalia, Ohio 45377
     Attorney for Plaintiff-Appellant

KYLE SHAW, Atty. Reg. No. 0077382, 250 E. Fifth Street, Suite 2200, Cincinnati, Ohio 45202
     Attorney for Defendant-Appellee

· · · · · · · · · ·

FROELICH, J.

{¶ 1}    David Swayze appeals from a judgment of the Dayton Municipal Court,

which found, after a bench trial, in favor of Firestone Complete Auto Care[1] on Swayze's claim for negligent repair of his vehicle. Swayze claims that the trial court's judgment was against the manifest weight of the evidence. For the following reasons, the trial court's judgment will be affirmed.

{¶ 2} According to the evidence at trial, Swayze was a long-time customer of the Firestone Complete Auto Care store on Main Street in Dayton. In June 2008, the store manager was Mike Norman, and Swayze routinely approached Norman directly about repairs that he needed to have done.

{¶ 3} On June 24, 2008, Swayze took his 1998 Ford F-150 pickup truck to Firestone for repair work. At that time, the truck's odometer read 236,213 miles. Swayze told Norman that the brakes felt like they were locking up.

{¶ 4} Norman testified for Firestone that Swayze pulled the vehicle into the bay, and Firestone did a brake inspection. Norman stated that the truck's brakes were worn and the emergency brake cables were not working properly. Swayze asked Norman "what it would take to fix the problem." Norman responded that the truck needed rear brake shoes, that the drums looked okay, but the emergency brake cables looked "bad" due to fraying and wear. Norman testified that Swayze checked his Firestone credit card and decided only to do the rear brake repair because his Firestone credit card was "maxed out." Norman testified that Swayze declined the work on the emergency brake cables, but agreed to replace the rear brake shoes and the serpentine belt, which was badly cracked. A Firestone

---

[1] At trial, defense counsel indicated that Firestone Complete Auto Care is a fictitious name under which Bridgestone Retail Operations LLC, the real party in interest, owns and operates auto care stores.

technician replaced the truck's rear brake shoes, the serpentine belt, and the alternator drive belt.   Swayze paid $251.96 for the repairs.

{¶ 5}   Later that evening, Swayze took the truck back to Firestone and said that he felt the same problem as before.   The same Firestone technician looked at the truck and told him that the new brake shoes just needed to be broken in.

{¶ 6}   Swayze continued to drive the truck and to bring the truck to Firestone for various repairs.   On June 30, 2008, Firestone performed rear differential fluid service as maintenance on the truck.   Norman testified that Swayze again chose not to have the emergency brake cable work performed.   On July 23, 2008, Firestone did work on the air control valve.

{¶ 7}   At approximately 8:00 p.m. on August 7, 2008, Swayze's truck broke down while he was driving.   At that point, the truck's mileage was 238,012.   Swayze had the truck towed to his home for the evening, and the next day he had the truck towed to Ohio Automatic Transmission, where he had previously received service for unrelated problems. Swayze reported to Ohio Automatic Transmission that he was having problems with the transmission.   According to Norman, Swayze also called Firestone and told Norman that the brakes "went out and took out the rear differential."

{¶ 8}   Swayze's truck was evaluated by Patti Thurman, the owner of Ohio Automatic Transmission, and the vehicle was serviced by Russell Smith.   Smith testified that, when he took the rear brakes apart, he discovered that the brake shoes had been put on backwards, that the hardware kit should have been replaced but was not, and that the slack adjusters "were unable to move and were seized up."   Smith stated that friction had caused

the brake shoes to crack. He testified that the brake job performed in June should have lasted more than 1,800 miles. Smith also saw problems with the transmission and differential. At Thurman's direction, Smith replaced the rear brakes and axles and overhauled the differential and the transmission. The costs for these repairs was $5,028.84.

{¶ 9} Norman testified that he went to Ohio Automatic Transmission to look at Swayze's vehicle after being informed of the problems. He inspected the brake shoes and saw that they were cracked down the middle. He stated that cracks are typically caused by "high speeds towing" or an emergency brake that is sticking. Norman testified that Thurman also showed him the rear differential, which had been taken apart, and that the clutch plates (which are built into the rear differential) were damaged, old, and worn. Norman stated that Thurman told him, "The e-brake cable was engaged which possibly caused the brakes to drag, finish off the old rear differential and wear out the clutch brakes [sic] and do that." Norman testified that Thurman had said that the damage was not Firestone's fault. (Swayze did not object to Norman's testimony regarding his conversation with Thurman.)

{¶ 10} During cross-examination, Smith was asked whether the damage to Swayze's truck could have been caused by the emergency brake's being engaged. Smith stated that, to his knowledge, the emergency brake was not engaged, and he did not believe the emergency brake caused the truck's problems. However, he agreed that driving with the emergency brake engaged could cause the clutches to go bad, which in turn could cause the transmission to fail.

{¶ 11} Swayze testified that he had never used the emergency brake on the truck,

but he recalled that Norman had told him not to use the emergency brake because it would cause damage to the vehicle. Swayze denied that he had used his truck for heavy hauling or loading between June 24 and August 8, 2008.

{¶ 12} After August 2008, Swayze continued to have his truck serviced at Firestone, and he indicated that he has not had any problems with his brakes since then. Swayze stated that he received oil changes at Firestone and had his windshield wiper assembly replaced there. Swayze testified that Firestone gave him a refund for the $251.96, since the brakes had to be redone.

{¶ 13} After considering the evidence, the trial court found in favor of Firestone. It reasoned:

> The facts at Trial establish that Swayze drove the truck for 46 days and 1,700 miles before the 8/08/08 breakdown. And after the work performed by Firestone on 6/24/08, Swayze took the truck back to Firestone 5 (five) separate times for further service and repairs. The Court cannot find that the work by Firestone on 6/24/08 on Swayze's truck was the proximate cause of the damage to Swayze. The lapse of 46 days between the time Firestone performed the repair work and the time the truck broke down, and Swayze's continued use of the truck during that period, supports the Court's view that Swayze has not established his claim by the requisite degree of proof. The Court, therefore, cannot award Plaintiff Swayze any damages as claimed in the Complaint.

{¶ 14} Swayze appeals from the trial court's judgment, claiming that the court's

decision is against the manifest weight of the evidence.

{¶ 15}  The weight to be given the evidence and the credibility of the witnesses are primarily matters for the trier of fact to determine.  *In re Guardianship of Smith*, 2d Dist. Clark No. 09 CA 69, 2010-Ohio-4528, ¶ 19, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967).  The court of appeals has an obligation to presume that the findings of the trier of fact are correct.  *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 24.  "This presumption arises because the trial judge [or finder-of-fact] had an opportunity 'to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'  * * *  'A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court.  A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not.'"  (Internal citations omitted.)  *Id.*

{¶ 16}  A trial court's judgment will be reversed only if its factual findings are against the manifest weight of the evidence.  *KeyBank Natl. Assn. v. Mazer Corp.,* 2d Dist. Montgomery No. 23483, 2010-Ohio-1508, ¶ 36.  In the civil context, a judgment will not be reversed by a reviewing court as being against the manifest weight of the evidence if there is some competent, credible evidence going to all the essential elements of the case.  *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus; *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 24.

{¶ 17}  Swayze argues that the evidence established that Firestone replaced the rear

brake shoes improperly by putting them on backward and that this negligence caused the damage to his truck. Swayze emphasizes that Smith testified that the emergency brake did not cause the breakdown of the vehicle and that Norman had no evidence to substantiate his claim that faulty emergency brake cables or hauling caused the problems. Swayze further takes issue with the trial court's emphasis on the amount of time between Firestone's replacement of the brakes shoes and the August breakdown.

{¶ 18} Upon review of the evidence, we cannot conclude that the trial court's judgment was against the manifest weight of the evidence. Norman testified that he informed Swayze that the emergency brake cables needed to be replaced on June 24, 2008, and that Swayze declined that service. Norman further testified that, when he went to Ohio Automatic Transmission to see Swayze's vehicle after its breakdown, Thurman told him that the emergency brake had been engaged, which had likely caused the damage to the rear brakes, the differential, and the transmission. Smith did not believe that the emergency brake was engaged and he opined that the emergency brake cables had not caused the damage, but he acknowledged that driving with the emergency brake engaged could cause the clutches to go bad, which in turn could cause the transmission to fail. In short, there was competent, credible evidence to support the trial court's judgment in favor of Firestone.

{¶ 19} Smith testified that the rear brake shoes had been installed backward, and he believed that the emergency brake cables had not caused the problems to Swayze's vehicle. Norman did not discuss whether the brake shoes had been installed properly, and he simply noted that his inspection at Ohio Automatic Transmission revealed that the brake shoes were cracked down the middle. The trial court could have reasonably chosen to believe that the

improper installation of the brake shoes precipitated the damage to the rear brakes, the differential, and the transmission. Nevertheless, as discussed above, in considering all of the evidence at trial, there was competent, credible evidence to support the view adopted by the trial court, namely that Swayze had not proven by a preponderance of the evidence that Firestone was responsible for the damage to his vehicle. The trial court's judgment was not against the manifest weight of the evidence.

{¶ 20}   Swayze's assignment of error is overruled.

{¶ 21}   The trial court's judgment will be affirmed.

. . . . . . . . . .

FAIN, J. and HALL, J., concur.

Copies mailed to:

Edward J. Duffy, Jr.
Kyle Shaw
Hon. John S. Pickrel