[Cite as *Holzapfel v. State*, 2018-Ohio-2750.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
DARKE COUNTY**

| | | |
|---|---|---|
| JILL HOLZAPFEL | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 2017-CA-13 |
| | : | |
| v. | : | Trial Court Case No. 2017-CVH-001- |
| | : | 0929 |
| STATE OF OHIO | : | |
| | : | (Civil Appeal from |
| Defendant-Appellee | : | Municipal Court) |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 13th day of July, 2018.

. . . . . . . . . .

NICOLE L. POHLMAN, Atty. Reg. No. 0086301, 2840 Alt. St. Rt. 49 N., P.O. Box 100, Arcanum, Ohio 45304
      Attorney for Plaintiff-Appellant

JESSE J. GREEN, Atty. Reg. No. 0040265, Darke County Courthouse, 3rd Floor, 504 S. Broadway, Greenville, Ohio 45331
      Attorney for Defendant-Appellee

. . . . . . . . . . . . .

FROELICH, J.

**{¶ 1}** Jill Holzapfel appeals from a judgment of the Darke County Municipal Court, which designated her dog, Buck, a "dangerous dog" pursuant to R.C. 955.11(A)(1)(a)(i) and ordered Holzapfel "to obtain a liability insurance policy for Buck in the amount of at least $100,000 to be effective immediately."

**{¶ 2}** Holzapfel appeals, arguing that Buck's designation was against the manifest weight of the evidence. For the following reasons, the trial court's judgment will be reversed.

### Facts and Procedural History

**{¶ 3}** The incident in question occurred on September 6, 2017; on September 7, Holzapfel was served with a notice informing her that Buck was deemed a "dangerous dog" pursuant to R.C. 955.11(A)(1)(a)(i) and explaining her right to a hearing to dispute the designation. Holzapfel requested a hearing in the trial court, which was held on November 6, 2017. According to the transcript, immediately before the hearing, Holzapfel pled guilty to charges of failure to control two dogs in violation of R.C. 955.22(C). The evidence at the hearing concerning the dangerous dog violation was as follows:

**{¶ 4}** Stacy Johns testified that she was walking her dog with a harness and a leash while heading toward a bike path near her home, when she noticed two German Shepherds coming from Holzapfel's house. Johns and Holzapfel were neighbors, and Johns knew that both dogs belonged to Holzapfel. To avoid an "altercation" between the dogs, Johns took her dog back to her house.

**{¶ 5}** Johns went back outside to walk the bike path, when she was again

approached by Holzapfel's dogs; Johns stated that they jumped on her legs and pushed her after she told them to "go home." She was pushed into a neighbor's front yard and "realized [the dogs] were not going to let [her] through." She headed back to her home because her "legs hurt for some reason"; when she got home, she realized that she had been bitten on her legs. Johns was "not 100% sure which one" bit her, because both dogs "nipped at her heels." Johns testified that she thought "maybe [it was] the black dog, [Buck]," that bit her, but she was "not positive."

{¶ 6} Later that day, Johns reported the incident to Roxanne Hammer, an animal control officer. Hammer responded to Johns's house, asked to see Johns's wounds, and filled out a statement about the incident. Hammer testified that she was concerned when Johns mentioned to her that there was a history of the dogs' bad behavior. Johns sought medical attention for the bite marks on her left and right ankle several weeks later, and she received a tetanus shot.

{¶ 7} Hammer testified that the black dog, Buck, was not on Holzapfel's property, but in another neighbor's yard, when she left Johns's residence. Hammer also testified that both dogs were "barking and growling" when she attempted to leave a "yellow card" at Holzapfel's house to inform Holzapfel of the dangerous dog designation. This prompted Hammer to use a bite pole "as protection." Hammer called Holzapfel to inform her that a citation for failure to control her dogs would be issued, in addition to a dangerous dog notice, for the black dog, Buck, who allegedly caused Johns's injuries. Holzapfel went to the animal shelter, where she was issued a dangerous dog notice for Buck.

{¶ 8} When the State rested, Holzapfel asked "the Court to rule in favor of the

petitioner," which was denied by the Court. Holzapfel then testified that Buck was not an aggressive dog. She also offered a 23-second video as "Petitioner's Exhibit 1"; the video showed Buck with children, who were "pulling on his face and petting him." Buck was not seen growling, snipping, or pawing at the children in the video. Holzapfel also presented a letter, "Petitioner's Exhibit 2," from Buck's veterinarian; the letter stated "[Buck] has been in my office numerous times over the years and has never exhibited aggressive behavior towards myself or any of my staff, despite this being a high stress situation." Holzapfel also offered pictures of Buck with strangers on October 31, 2017 as evidence of his good behavior.

### *Analysis*

{¶ 9} On appeal, Holzapfel argues that the dangerous dog designation was against the manifest weight of evidence.

{¶ 10} In pertinent part, R.C. 955.11(A)(1)(a)(i) defines a "dangerous dog" as follows:

(a) "Dangerous dog" means a dog that, without provocation, * * * has done

any of the following:

(i) Caused injury, other than killing or serious injury, to any person[.]

{¶ 11} After a dog owner has received notice of a dangerous dog designation, he or she may request a hearing in the municipal court or county court. R.C. 955.222(B)(2). The court conducts a de novo review of the dangerous dog designation. *Montgomery Cty. Animal Resource Ctr. v. Johnson*, 2d Dist. Montgomery No. 27110, 2017-Ohio-7939, ¶ 11; *Spangler v. Stark Cty. Dog Warden*, 2013-Ohio-4774, 999 N.E.2d 1247, ¶ 18 (5th Dist.). At the hearing, the person who designated the dog as a dangerous dog has the

burden of proving, by clear and convincing evidence, that the dog is a dangerous dog. R.C. 955.222(C).

{¶ 12} The Ohio Supreme Court has defined "clear and convincing evidence" as "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." *In re Estate of Haynes,* 25 Ohio St.3d 101, 104, 495 N.E.2d 23 (1986).

{¶ 13} The manifest weight standard of appellate review used in *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997), applies in both civil and criminal cases. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 17. When reviewing an argument challenging the weight of the evidence, an appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins* at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). A judgment should be reversed as being against the manifest weight of the evidence only in exceptional cases. *Martin* at 175.

{¶ 14} The State argues that the trial court's holding was supported by the evidence because Johns testified that both dogs "nipped at her ankles." Holzapfel argues that Buck's designation was not supported by clear and convincing evidence because no evidence – let alone clear and convincing evidence – was presented proving

Buck caused Johns's injuries.

{¶ 15} In closing, the prosecutor argued that although the complainant "*couldn't tell which dog bit her* * * * she indicated that *if* the other dog bit her that one *could have* been on each side of her ankles." (Emphasis added.) The defense argued that Johns did not "state that she knew for sure that Buck bit her, and Buck is the one that is at issue in this case." The court took the case under advisement and subsequently filed a judgment entry finding that the State met its burden of proof by clear and convincing evidence that Buck, without provocation, caused injury by biting a person and causing injury.

{¶ 16} Johns testified that it could have been either dog which caused the injury to her legs and that she was not "100% sure" which dog bit her and caused her injury. There was no evidence or testimony that both dogs bit Johns. She did not indicate why she thought "maybe" Buck was the dog that caused her injury. "Maybe" is commonly defined as "possibly" or "perhaps." *Merriam-Webster Collegiate Dictionary* 767 (11th Ed.2018). It is indeed possible that Buck bit her ("maybe"), but it was not proven by clear and convincing evidence.

{¶ 17} Based on the evidence presented in this case, the trial court erred in concluding that the State demonstrated by clear and convincing evidence that Buck caused Johns's injury.

{¶ 18} The assignment of error is sustained.

### Conclusion

{¶ 19} The judgment of the trial court will be reversed.

. . . . . . . . . . . . .

DONOVAN, J., concurs.

WELBAUM, P.J., dissenting:

{¶ 20} I very respectfully dissent.

{¶ 21} As pertinent here, a dangerous dog is "a dog that, without provocation, * * * has done any of the following: (i) [c]aused injury, other than killing or serious injury, to any person * * *."  R.C. 955.11(A)(1)(a)(i).  If a dog owner challenges a dog warden's designation of a dog as dangerous, the warden is required to prove at a hearing, by clear and convincing evidence, that the dog is a dangerous dog.  R.C. 955.222(C).  Clear and convincing evidence is defined as " '[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established.  It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal.' "  *Ali v. Lucas Cty. Dog Warden*, 2017-Ohio-2809, 91 N.E.3d 68, ¶ 9 (6th Dist.), quoting *In re Estate of Haynes*, 25 Ohio St.3d 101, 104, 495 N.E.2d 23 (1986).

{¶ 22} In bench trials, the court "assumes the fact-finding function of the jury." *Cleveland v. Welms*, 169 Ohio App.3d 600, 2006-Ohio-6441, 863 N.E.2d 1125, ¶ 16 (8th Dist.).  We have said that in reviewing judgments following bench trials, "we are ' "guided by the presumption" that the trial court's findings are correct.' "  *Shank v. Charger, Inc.*, 186 Ohio App.3d 605, 2010-Ohio-1129, 929 N.E.2d 520, ¶ 41 (2d Dist.), quoting *Patterson v. Patterson*, 3d Dist. Shelby No. 17-04-07, 2005-Ohio-2254, ¶ 26.  (Other citation omitted.)  We have also stressed that " ' "[a] reviewing court should not reverse

a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." ' " *Shank* at ¶ 41, quoting *Gevedon v. Ivey*, 172 Ohio App.3d 567, 2007-Ohio-2970, 876 N.E.2d 604, ¶ 7 (2d Dist.). (Other citation omitted.) *Accord Swayze v. Firestone Complete Auto Care*, 2d Dist. Montgomery No. 24983, 2012-Ohio-2111, ¶ 15; *Otstot v. Owens*, 2d Dist. Clark No. 2015-CA-57, 2016-Ohio-233, ¶ 7.

{¶ 23} I agree that this is a close case regarding whether the State proved by clear and convincing evidence that Holzapfel's dog, Buck, was guilty of biting Stacy Johns and, therefore, was properly designated as a dangerous dog. However, I do not believe that the trial court's judgment was against the manifest weight of the evidence.

{¶ 24} Admittedly, on the date of trial, Johns could not positively identify which of. Holzapfel's two attacking dogs had bitten her. Nonetheless, there was enough evidence for the trial court to reasonably conclude by clear and convincing evidence that Buck was the guilty dog.

{¶ 25} There was no dispute at trial that Buck was the black dog owned by Holzapfel. *See* November 6, 2017 Bench Trial Transcript ("Tr."), p. 36. At trial, when Johns was asked which dog bit her, she said, "I'm not positive, to be honest. I think maybe the black one but I am not positive. I really am not." Tr. at p. 15. Johns also testified that both dogs pushed her, that the dogs were jumping on her with their front legs, and that the dogs were nipping at her heels. Tr. at pp. 14-15. Johns noticed that her legs hurt, and when she returned home, she realized that both legs had been bitten. Tr. at pp. 16-17.

{¶ 26} If one were to rely solely on Johns's trial testimony, the judgment might have been against the manifest weight of the evidence. However, this was not the only testimony, as Johns made statements to the animal control officer shortly after the incident, and these statements were admitted at trial.

{¶ 27} Prior statements by witnesses concerning identification of persons (and presumably accused dogs) are not hearsay and are admissible whether or not the witness is capable of making the identification at trial. *See* Evid.R. 801(D)(1)(c). This rule requires that the statement must be "one of identification of a person soon after perceiving the person, if the circumstances demonstrate the reliability of the prior identification." *Id.* The person who made the out-of-court identification must also testify at trial and be subject to cross-examination. *Id.*

{¶ 28} Here, the circumstances demonstrate the reliability of Johns's prior identification of Buck as the guilty dog. According to Roxanne Hammer, the animal control officer, Johns told her shortly after the attack that "[a] black German Shepard type dog and a lighter colored brown dog * * * both came at her[,] and the black dog bit her on the ankles." Tr. at pp. 27-28. Officer Hammer acted on that information in a manner that adds reliability to the identification. Specifically, Hammer testified that: "While I was out there, when I left Mrs. Johns' residence to go to Mrs. Holzapfel, I did see the black dog in another neighbor's yard." Tr. at p. 28.

{¶ 29} Furthermore, when Hammer attempted to leave a notice at Holzapfel's property, the two dogs were so aggressive, including growling and barking, that Hammer had to retreat to her vehicle three times, even after she tried to distract the dogs with treats. Subsequently, the dogs sat down by the front door of Holzapfel's house, and then

eventually ran around to the back, where they apparently went into the house through an open back door. According to Hammer, after the dogs ran around the side of the house, she got out of her truck and left a card on the front door of the house. At that point, Hammer heard dogs barking inside the house, snuck around the house, and saw an open patio door. Hammer then reached over and closed the door. *Id.* at pp. 30-31.

{¶ 30} Hammer testified that she contacted Holzapfel and said that she was going to issue a citation. When Holzapfel came to the animal shelter, Hammer "issued a * * * dangerous dog notice for the black dog named Buck because he was the one that was supposed to have bitten [Johns]." *Id.* at p. 31.

{¶ 31} The trial court was entitled to give this testimony such weight as it deemed proper. We have acknowledged that we will not substitute our "judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict." *Montgomery Cty. Animal Resource Ctr. v. Johnson*, 2017-Ohio-7939, 98 N.E.3d 983, ¶ 14 (2d Dist.), citing *State v. Bradley*, 2d Dist. Champaign No. 97-CA-03, 1997 WL 691510 (Oct. 24, 1997).

{¶ 32} As an additional matter, Holzapfel never objected to Hammer's testimony about Johns's identification of the black dog as the culprit. *See* Tr. at pp. 27-28 (showing that no objections were made to Hammer's testimony).

{¶ 33} For the above reasons, I believe this is not a case where the trial court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. Accordingly, I would affirm the judgment of the trial court.

{¶ 34} I very respectfully dissent for the foregoing reasons.

Copies mailed to:

Nicole L. Pohlman
Jesse J. Green
Hon. Julie L. Monnin