[Cite as *State v. Houston*, 2018-Ohio-3043.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**Nos. 106470 and 106055**

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**CARDELL D. HOUSTON**

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED IN PART; REMANDED
FOR SENTENCING

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos. CR-16-604546-A and CR-16-611762-A

**BEFORE:** E.A. Gallagher, A.J., E.T. Gallagher, J., and Keough, J.

**RELEASED AND JOURNALIZED:** August 2, 2018

**ATTORNEYS FOR APPELLANT**

Mark A. Stanton
Cuyahoga County Public Defender
BY: Noelle A. Powell
        Jeffrey Gamso
Assistant Public Defenders
310 Lakeside Ave., Suite 200
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
BY: Brian Radigan
Assistant County Prosecutor
The Justice Center, Ninth Floor
1200 Ontario Street
Cleveland, Ohio 44113

EILEEN A. GALLAGHER, A.J.:

**{¶1}** In this consolidated appeal, defendant-appellant Cardell Houston appeals his conviction for murder and the trial court's imposition of a mandatory consecutive sentence. We affirm in part, and reverse in part.

**Factual and Procedural Background**

**{¶2}** In 2016 Houston was charged in CR-16-611762 with aggravated murder, two counts of murder, two counts of felonious assault and one count of having weapons while under disability. The case proceeded to a bench trial where the following facts were adduced.

**{¶3}** On November 20, 2015, William Barnes, Jr. was shot and killed in his car on West 104 Street near Western Avenue in Cleveland, Ohio. Surveillance video from two nearby homes captured the incident and showed that at approximately 2:06 p.m. a blue Chevy Trailblazer appeared and parked on West 104th near Western Avenue. Three minutes later Barnes appeared in a Hyundai Sonata and parked behind the Trailblazer. About one minute later a black male exited the Trailblazer and entered the front passenger seat of Barnes' vehicle. Just under two minutes later, a second black male exited the Trailblazer and entered the rear passenger seat of Barnes' automobile. Less than a minute thereafter flashes of light were visible inside the rear passenger compartment of the Sonata; the front passenger exited the vehicle and seconds later the right rear passenger exited the vehicle as well. The surveillance video showed that after exiting, the rear passenger placed his left hand on the roof of the Sonata just above the right rear passenger door while leaning with his right arm extended back into the passenger compartment of the vehicle. A neighbor witnessed the shooting and testified to seeing two shots fired through an open door of Barnes' vehicle from the passenger side of the vehicle. The posture of the right rear passenger in the video was consistent with this testimony. That

passenger then turned to flee back to the Trailblazer and an object consistent with the appearance of a firearm could be seen in his right hand. Nine millimeter shell casings were later recovered by police from both inside the Sonata and on the sidewalk near the passenger side of the vehicle.

{¶4} The two persons fled in the Trailblazer and shortly thereafter Barnes' Sonata slowly rolled forward into a van parked in front of it. Neighbors who heard, and saw, part of the shooting called 911 and Barnes was found shot and hunched over in the driver seat of the Sonata. He was transported to MetroHealth hospital where he was ultimately pronounced dead.

{¶5} An autopsy was performed and Dr. Erica Armstrong testified that Barnes had sustained five gunshot wounds. Three gunshot wounds were to Barnes' back right shoulder, the upper portion of his back on the right side and his lower right back. Dr. Armstrong detailed the path of those gunshots as back to front and right to left through Barnes' body. The direction of these wounds was consistent with the state's theory at trial that Barnes was shot by the passenger in the right rear seat of his vehicle.

{¶6} Investigating detectives swabbed the roof of Barnes' car where the surveillance video reflected the shooter touching the vehicle and the Cuyahoga County Medical Examiner's Office linked the major component of the mixture of DNA obtained from those swabs to Cardell Houston. A forensic scientist testified at trial that, to a reasonable degree of scientific certainty, in the absence of an identical twin, Cardell Houston was the source of the major DNA component obtained from the roof of Barnes' car where the shooter had placed his hand.

{¶7} The trial court found Houston not guilty of aggravated murder but guilty of two counts of murder and two counts of felonious assault. The count of having weapons while under disability was nolled. The trial court merged all four counts as allied offenses and, at sentencing, the state elected to proceed to sentencing on the charge of murder in Count 2. The

court imposed a prison term of 15 years to life to be served consecutive to an attached three-year firearm specification. The court also ordered Houston's sentence for murder to be served consecutively to his sentences in four other cases: CR-603783, CR-604546, CR-604979 and CR-607747.

{¶8} In this consolidated appeal Houston also appeals from his sentence in CR-604546. In that case, Houston was charged with failure to comply, failure to stop after an accident and two counts of criminal damaging or endangering. Houston entered a guilty to plea to an amended count of attempted failure to comply and the remaining counts were nolled. The trial court imposed a prison term of 18 months in that case and ordered that sentence to be served consecutive to Houston's sentences in CR-603783, CR-611762, CR-604979 and CR-607747. The trial court stated at sentencing that it was compelled to run Houston's sentence for attempted failure to comply consecutive to the other sentences because consecutive service of this count was "mandatory" under the law.

**Law and Analysis**

**I. Manifest Weight**

{¶9} In his first assignment of error, Houston argues that his conviction for murder was against the manifest weight of the evidence.

{¶10} A manifest weight challenge attacks the credibility of the evidence presented and questions whether the state met its burden of persuasion at trial. *State v. Whitsett*, 8th Dist. Cuyahoga No. 101182, 2014-Ohio-4933, ¶ 26, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541; *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 13. Because it is a broader review, a reviewing court may determine that a

judgment of a trial court is sustained by sufficient evidence but nevertheless conclude that the judgment is against the weight of the evidence.

{¶11} In evaluating a challenge to the verdict based on the manifest weight of the evidence in a bench trial,

> The trial court assumes the fact-finding function of the jury. Accordingly, to warrant reversal from a bench trial under a manifest weight of the evidence claim, this court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in evidence, the trial court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered.

*Cleveland v. Welms*, 169 Ohio App.3d 600, 2006-Ohio-6441, 863 N.E.2d 1125, ¶ 16, citing *Thompkins* (8th Dist.).

{¶12} In conducting such a review, this court remains mindful that the credibility of witnesses and the weight of the evidence are matters primarily for the trier of fact to assess. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraphs one and two of the syllabus. Reversal on manifest weight grounds is reserved for the "exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983).

{¶13} Houston first argues that the record does not establish that the person seated in the rear passenger seat of Barnes' vehicle was the shooter. We disagree. The surveillance video showed flashes of light appearing to emanate from the rear seat of the vehicle. The front passenger exited the vehicle almost immediately and there was no sign of a firearm in his hands. The rear passenger exited thereafter and appeared to lean back into the vehicle to fire additional shots. The eyewitness testimony was consistent with this interpretation of the video footage. In the video, when the rear passenger turns to flee, an object appearing to be a firearm can be

seen in his right hand. Finally, the forensic pathologist's testimony established that Barnes was shot in the back with the bullets traveling right to left and back to front through his body. The described bullet travel paths were consistent with the rear passenger being the shooter.

{¶14} Houston next argues that the state failed to prove Houston's identity as the right rear passenger. His arguments pertaining to the True Allele technology are more thoroughly addressed in our analysis of the second assignment of error. However, the video clearly revealed that the right rear passenger placed his palm on the roof of the car above the right rear door. The DNA retrieved from that location matched Houston. Furthermore, the state argued that Houston's physical stature matched that of the rear passenger captured on the surveillance video. The trial court was in the best position to judge this factor. We cannot say that its judgment is against the manifest weight of the evidence.

{¶15} Finally Houston argues that the state failed to prove a motive. However, the state was not required to prove what Houston's motive might have been in murdering Barnes. The fact that the state was not able to explain what events may have precipitated Houston's shooting of Barnes is not fatal to its case.

{¶16} Houston's first assignment of error is overruled.

**II. True Allele DNA testing**

{¶17} In his second assignment of error, Houston argues that his trial counsel failed to provide effective assistance of counsel under the Sixth Amendment because his counsel did not object to the use of True Allele DNA technology by the Cuyahoga County Medical Examiner's Office.

{¶18} In order to establish a claim of ineffective assistance of counsel, a defendant must prove (1) his counsel was deficient in some aspect of his representation, and (2) there is a

reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

{¶19} "Objecting is a tactical decision." *State v. Frierson*, 8th Dist. Cuyahoga No. 105618, 2018-Ohio-391, ¶ 25, citing *State v. Johnson*, 7th Dist. Jefferson No. 16 JE 0002, 2016-Ohio-7937, ¶ 46. Accordingly, "the failure to make objections is not alone enough to sustain a claim of ineffective assistance of counsel." *Id.*, quoting *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 103.

> Experienced trial counsel learn that objections to each potentially objectionable event could actually act to their party's detriment. * * * In light of this, any single failure to object usually cannot be said to have been error unless the evidence sought is so prejudicial * * * that failure to object essentially defaults the case to the state. Otherwise, defense counsel must so consistently fail to use objections, despite numerous and clear reasons for doing so, that counsel's failure cannot reasonably have been said to have been part of a trial strategy or tactical choice.

*State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, 858 N.E.2d 1144, at ¶ 140.

{¶20} In this instance Houston cannot establish prejudice because the trial testimony and DNA lab report both reflect that the True Allele technology that he presently challenges was not utilized to match his DNA to the major component DNA obtained from the roof of Barnes' vehicle above the right rear passenger door. The forensic scientist who did the DNA comparison of that item to Houston's DNA testified that True Allele does not change or affect the traditional way of making a DNA determination in regards to a major component found in a DNA sample. Such a major component was found in the roof sample, a CODIS hit linked that component to Houston and a swab obtained from Houston confirmed the match. The lab report further sets out other items from the scene that were swabbed and produced inconclusive results due to mixtures. The True Allele technology was used to examine these items but the report reflects that the technology did not produce any matches to Houston. Neither the trial testimony

nor the report indicated that the match of Houston's DNA to the roof sample was made using True Allele technology.

{¶21} Therefore, we find no merit to Houston's assertion that the DNA evidence in this case was the product of new and uncertain testimony because True Allele was not used in the relevant DNA match in this case. Furthermore, the forensic scientist testified that a scientific certainty applies to the technology and techniques that were used in this case and that such technology and techniques are widely accepted in the field.

{¶22} Finally, Houston argues that his counsel was ineffective because he failed to recross the forensic scientist regarding the possible degradation of a DNA sample over time. However, the issue was thoroughly explored during redirect examination and there is no indication in this instance that any environmental degradation occurred between the time Houston could be seen touching the roof of the vehicle on the video and when the swab of that location was performed by the investigating officers.

{¶23} Houston's second assignment of error is overruled.

### III. Compliance with the Confrontation Clause

{¶24} In his third assignment of error, Houston argues that he was denied his Sixth Amendment right to be confronted with the witnesses against him when the state introduced trace evidence through a forensic scientist who did not actually conduct the trace evidence testing in this case. The forensic scientist testified that the testing of the trace evidence in the case was performed by her supervisor who was on vacation at the time of trial. She reviewed the case file and the trace evidence report for accuracy and technical content.

{¶25} Houston concedes that he did not object to the forensic scientist's testimony or the introduction of the trace evidence report. Accordingly, he has waived all but plain error. *State*

*v. Johnson*, 8th Dist. Cuyahoga No. 105424, 2018-Ohio-1387, ¶ 27, citing *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 21-25. Crim.R. 52(B) provides that, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." To prevail on a claim of plain error, the defendant must demonstrate that but for the error, the outcome of the proceedings clearly would have been different. *State v. Long*, 53 Ohio St. 2d 91, 372 N.E.2d 804 (1978), paragraph two of the syllabus; *Rogers* at ¶ 22. We have applied the plain error doctrine to instances where the appellant failed to object to an alleged confrontation clause error at trial. *See, e.g.*, *State v. McFeeture*, 2015-Ohio-1814, 36 N.E.3d 689 (8th Dist.).

{¶26} The decision most closely on point with the present issue is *Bullcoming v. New Mexico*, 564 U.S. 647, 131 S.Ct. 2705, 180 L.Ed.2d 610 (2011). In *Bullcoming*, the United States Supreme Court held that the confrontation clause did not permit "the prosecution to introduce a forensic laboratory report containing a testimonial certification — made for the purpose of proving a particular fact — through the in-court testimony of a scientist who did not sign the certification or perform or observe the test reported in the certification." *Id*. at 652.

{¶27} However, we need not consider the application of *Bullcoming* to the present facts because Houston cannot establish plain error. As Houston concedes, the sole purpose of the trace evidence testimony in this case was to establish that Barnes was shot by the right rear seated passenger. This fact was independently established by the testimony of the forensic pathologist who performed the autopsy on Barnes. Therefore, the trace evidence testimony and report was merely cumulative in nature and its exclusion would not have altered the outcome of the proceeding.

{¶28} Houston's third assignment of error is overruled.

## IV.  Ineffective Assistance of Counsel at Sentencing

{¶29} In his fourth assignment of error, Houston argues that his trial counsel failed to provide effective assistance of counsel at sentencing because he did not make an argument in favor of concurrent sentences.

{¶30} Houston must demonstrate that his trial counsel's performance was deficient and that there is a reasonable probability that the trial court's sentence would have been different but for counsel's errors. *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 143, 538 N.E.2d 373 (1989), paragraph three of the syllabus.

{¶31} In this instance, Houston's trial counsel ensured that the trial court had a presentence investigation report for his client.   Counsel then informed the court that Houston wished to address the court and stated, "I have given him some advice as to what not to say or say. But it's still up to him, Judge."   Houston then addressed the trial court and maintained that he was innocent.   No further arguments were presented.

{¶32} The trial court noted that he had reviewed the presentence investigation report.   In addition to the murder and attempted failure to comply convictions addressed in the present appeal, Houston was sentenced on guilty pleas in three separate cases for receiving stolen property and two counts of burglary.   The trial court noted that Houston had a record of criminal conduct as a juvenile that was "significant, lengthy and extremely serious."   The pre-sentence investigation report reflects that Houston had juvenile adjudications for felonious assault with firearm specifications, improper discharge into a habitation and disorderly conduct.

{¶33} Houston does not dispute that the trial court made all the required findings for the imposition of consecutive sentences or that such findings were not supported by the record.

**{¶34}** In light of this record and the fact that Houston was being sentenced in the present case for murder, we cannot say that the trial court's sentence would have been different had Houston's counsel argued for concurrent sentences.

**{¶35}** We do note that a sentencing error was made by the trial court as to the mandatory nature of the consecutive sentence between Houston's murder case and his attempted failure to comply case. That error is more appropriately addressed in the following assignment of error.

**{¶36}** Houston's fourth assignment of error is overruled.

## V. The Mandatory Consecutive Sentence

**{¶37}** In his fifth assignment of error, Houston argues that the trial court erred when it ordered his sentence for attempted failure to comply in CR 604546 to be served consecutively under the belief that consecutive service of that count was mandatory under the law.

**{¶38}** In *State v. Garner*, 8th Dist. Cuyahoga Nos. 97948 and 97949, 2012-Ohio-3262, ¶ 18, this court held that a trial court erred in determining that it is mandated to impose a consecutive prison term pursuant to R.C. 2921.331(D) for a charge of attempted failure to comply.

**{¶39}** The state concedes that the trial court erred in this instance. Pursuant to *Garner,* we find that Houston's sentence in CR 604546 is contrary to law and sustain this assignment of error.

## VI. Cumulative Error

**{¶40}** In his sixth assignment of error, Houston argues that the cumulative errors by his trial counsel denied him his Sixth Amendment right to the effective assistance of counsel.

**{¶41}** Pursuant to the doctrine of cumulative error, a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal. *State v. Baker*, 8th Dist. Cuyahoga No. 95300, 2011-Ohio-2784, ¶ 59, citing *State v. Garner*, 74 Ohio St.3d 49, 1995-Ohio-168, 656 N.E.2d 623.

**{¶42}** In order to find "cumulative error" present, we first must find that multiple errors were committed at trial. We then must find a reasonable probability that the outcome of the trial would have been different but for the combination of the separately harmless errors. *State v. Djuric*, 8th Dist. Cuyahoga No. 87745, 2007-Ohio-413, ¶ 52. To affirm in spite of multiple errors, we would have to determine that the cumulative effect of the errors is harmless beyond a reasonable doubt. *State v. Williams*, 8th Dist. Cuyahoga No. 94261, 2011-Ohio-591, ¶ 25, citing *State v. DeMarco*, 31 Ohio St.3d 191, 195, 509 N.E.2d 1256 (1987) (stating that the errors can be considered harmless if there is overwhelming evidence of guilt or other indicia that the errors did not contribute to the conviction).

**{¶43}** In this instance, Houston merely reiterates the arguments addressed in his second, third, fourth and fifth assignments of error. The error pertaining to the mandatory consecutive sentencing issue was addressed and sustained in the fifth assignment of error. Having found no merit in Houston's other arguments we find no cumulative error in this instance.

**{¶44}** The judgment of the trial court is affirmed in part, and reversed in part.

**{¶45}** Houston's sentence in CR-16-604546 is vacated, and this cause is remanded for resentencing in accordance with this decision.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Cuyahoga County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, ADMINISTRATIVE    JUDGE

EILEEN T. GALLAGHER, J., and
KATHLEEN ANN KEOUGH, J., CONCUR