[Cite as *State v. Houston*, 2019-Ohio-4787.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                               :

    Plaintiff-Appellee,            :

                                              No. 108156

    v.                             :

CARDELL D. HOUSTON,                          :

    Defendant-Appellant.           :

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** November 21, 2019

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-16-611762-A

***Appearances:***

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Gregory J. Ochocki, Assistant Prosecuting Attorney, *for appellee.*

Mark A. Stanton, Cuyahoga County Public Defender, and Noelle A. Powell and Jeffrey M. Gamso, Assistant Public Defenders, *for appellant.*

RAYMOND C. HEADEN, J.:

{¶ 1} Defendant-appellant Cardell D. Houston ("Houston") appeals from the trial court's denial of his petition for postconviction relief without a hearing. For the reasons that follow, we affirm.

## Procedural and Substantive History

**{¶ 2}** On December 8, 2016, in Cuyahoga C.P. No. CR-16-611762-A, Houston was charged with one count of aggravated murder, two counts of murder, two counts of felonious assault, and one count of having weapons while under disability. Five of the six counts carried one- and three-year firearm specifications. After a bench trial, Houston was found guilty of both counts of murder and both counts of felonious assault. For this case and four separate cases, the trial court sentenced Houston to an aggregate sentence of $25^{1/2}$ years to life.

**{¶ 3}** Houston appealed, arguing among other things that he received ineffective assistance of counsel based on the failure to object to the use of True Allele DNA technology. This court overruled Houston's assignments of error. *State v. Houston*, 8th Dist. Cuyahoga Nos. 106470 and 106055, 2018-Ohio-3043.

**{¶ 4}** The following factual history was set forth in Houston's direct appeal:

On November 20, 2015, William Barnes, Jr. was shot and killed in his car on West 104th Street near Western Avenue in Cleveland, Ohio. Surveillance video from two nearby homes captured the incident and showed that at approximately 2:06 p.m. a blue Chevy Trailblazer appeared and parked on West 104th Street near Western Avenue. Three minutes later Barnes appeared in a Hyundai Sonata and parked behind the Trailblazer. About one minute later a black male exited the Trailblazer and entered the front passenger seat of Barnes'[s] vehicle. Just under two minutes later, a second black male exited the Trailblazer and entered the rear passenger seat of Barnes' automobile. Less than a minute thereafter flashes of light were visible inside the rear passenger compartment of the Sonata; the front passenger exited the vehicle and seconds later the right rear passenger exited the vehicle as well. The surveillance video showed that after exiting, the rear passenger placed his left hand on the roof of the Sonata just above the right rear passenger door while leaning with his right arm extended back into the passenger compartment of the vehicle. A neighbor witnessed the

shooting and testified to seeing two shots fired through an open door of Barnes'[s] vehicle from the passenger side of the vehicle. The posture of the right rear passenger in the video was consistent with this testimony. That passenger then turned to flee back to the Trailblazer and an object consistent with the appearance of a firearm could be seen in his right hand. Nine millimeter shell casings were later recovered by police from both inside the Sonata and on the sidewalk near the passenger side of the vehicle.

The two persons fled in the Trailblazer and shortly thereafter Barnes'[s] Sonata slowly rolled forward into a van parked in front of it. Neighbors who heard, and saw, part of the shooting called 911 and Barnes was found shot and hunched over in the driver seat of the Sonata. He was transported to MetroHealth hospital where he was ultimately pronounced dead.

An autopsy was performed and Dr. Erica Armstrong testified that Barnes had sustained five gunshot wounds. Three gunshot wounds were to Barnes'[s] back right shoulder, the upper portion of his back on the right side and his lower right back. Dr. Armstrong detailed the path of those gunshots as back to front and right to left through Barnes'[s] body. The direction of these wounds was consistent with the state's theory at trial that Barnes was shot by the passenger in the right rear seat of his vehicle.

Investigating detectives swabbed the roof of Barnes'[s] car where the surveillance video reflected the shooter touching the vehicle and the Cuyahoga County Medical Examiner's Office linked the major component of the mixture of DNA obtained from those swabs to Cardell Houston. A forensic scientist testified at trial that, to a reasonable degree of scientific certainty, in the absence of an identical twin, Cardell Houston was the source of the major DNA component obtained from the roof of Barnes'[s] car where the shooter had placed his hand.

*Houston* at ¶ 3-6.

{¶ 5} On September 4, 2018, Houston filed a petition for postconviction relief. His ground for relief asserted that he was denied his right to effective assistance of counsel based on his attorney's failure to investigate the DNA evidence

and science relevant to this case. He attached a declaration from Dr. Dan E. Krane, a DNA expert, explaining the limitations of the particular type of DNA mixture involved in this case, to his petition.

{¶ 6} On December 27, 2018, the trial court denied Houston's petition without a hearing. The court stated its reasoning as follows:

> Even if the court were to consider Dr. Krane's declaration, nonetheless in substance the declaration merely states "the report indicates that DNA believed to be Cardell Houston's was a major contributor to a mixture of DNA used to convict Mr. Houston. The fact that someone is a major contributor does not mean that he had more contact or more recent contact than other contributors with the site from which DNA was taken." (Decl. of Dr. Kerns ¶ 2). However, nowhere does the declaration or the motion explain how this testimony constitutes sufficient operative facts to establish that the defense was prejudiced by the alleged ineffective assistance of counsel.
>
> Dr. Krane's declaration includes statements concerning potential analysis of the DNA evidence however neither the petition nor its attachments request discovery under R.C. 2953.21(A)(1)(D). And in the absence of results the effect of any such analysis on trial is speculative. Speculation cannot be used to satisfy the defendant's initial burden to submit evidentiary documents containing sufficient operative facts to establish a right to a hearing.
>
> Accordingly, the petitioner has failed to satisfy his initial burden to establish an entitlement to a hearing.

{¶ 7} Houston appeals, presenting a single assignment of error for our review.

## Law and Analysis

**{¶ 8}** In Houston's sole assignment of error, he argues that the trial court erred when it dismissed his petition for postconviction relief without a hearing because he had demonstrated a genuine issue of material fact.

**{¶ 9}** A petition for postconviction relief is a collateral civil attack on a criminal judgment and is governed by R.C. 2953.21(A)(1)(a), which provides:

> Any person who has been convicted of a criminal offense * * * and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States * * *, may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief. The petitioner may file a supporting affidavit and other documentary evidence in support of the claim for relief.

A petitioner is not automatically entitled to a hearing. *State v. West*, 8th Dist. Cuyahoga No. 92800, 2009-Ohio-6464, ¶ 14, citing *State v. Calhoun*, 86 Ohio St.3d 279, 282, 714 N.E.2d 905 (1999). Rather, the statute provides that before granting a hearing on the petition, the court "shall determine whether there are substantive grounds for relief." R.C. 2953.21(D). The statute places the initial burden of demonstrating a cognizable claim of constitutional error on the petitioner in order to establish that they are entitled to a hearing. *State v. Jackson*, 64 Ohio St.2d 107, 413 N.E.2d 819 (1980).

**{¶ 10}** To establish ineffective assistance of counsel, a defendant must show (1) that counsel's performance fell below an objective standard of reasonable representation, and (2) that had counsel performed competently, there was a

reasonable probability of a different outcome. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Where, as here, the petition is based on alleged ineffective assistance of counsel, the petitioner bears the initial burden "to submit evidentiary documents containing sufficient operative facts to demonstrate the lack of competent counsel and *also* that the defense was prejudiced by counsel's ineffectiveness." (Emphasis sic.) *Jackson* at 111.

{¶ 11} In determining whether the trial court properly denied Houston's petition without a hearing, this court reviews for abuse of discretion. *State v. Smith*, 8th Dist. Cuyahoga No. 93534, 2010-Ohio-1869, ¶ 23, citing *State v. Banks*, 10th Dist. Franklin No. 08-AP-722, 2009-Ohio-1667, ¶ 10. An abuse of discretion connotes more than an error of law or judgment, it entails a decision that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 12} Houston argues that his trial counsel was ineffective for failing to effectively challenge the only evidence against him, a mixture of touch DNA. Houston provided Dr. Krane's expert declaration that explained the type of DNA evidence involved in this case, as well as the type of explanation that Dr. Krane could have provided at trial if he had been called as an expert. Houston also argues that based on his trial counsel's cross-examination of the state's DNA expert, it is clear that counsel failed to consult with a DNA expert. If he had, Houston argues, counsel could have questioned the state's expert regarding how many contributors the DNA mixture may have had, how some people shed more DNA than others, the possibility

that the DNA was transferred from one person to another person and then transferred to an object, and the inability to determine which contributor to the DNA evidence had deposited their sample most recently.

{¶ 13} When determining whether counsel performance was deficient, courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. 689, 104 S.Ct. 2052, 80 L.Ed.2d 674. This court has previously found that the decision to rely on cross-examination rather than retaining a DNA expert does not constitute ineffective assistance of counsel. *State v. Blevins*, 8th Dist. Cuyahoga No. 106115, 2018-Ohio-3583, ¶ 31, citing *State v. Nicholas*, 66 Ohio St.3d 431, 436, 613 N.E.2d 225 (1993). Further, in his direct appeal, this court rejected Houston's argument that his counsel was ineffective for failing to fully explore potential issues with his DNA evidence during cross-examination. *Houston*, 8th Dist. Cuyahoga Nos. 106470 and 106055, 2018-Ohio-3043, at ¶ 22. Houston's argument in this appeal is similarly insufficient to satisfy the first prong of the *Strickland* test.

{¶ 14} Even if we agree with Houston that his trial counsel was constitutionally deficient for failing to call a DNA expert, or failing to effectively cross-examine the state's expert, Houston has not established prejudice. Dr. Krane's declaration provides additional information about touch DNA evidence that likely would have been relevant at Houston's trial. The declaration does not, however, make any attempt to conclude how the outcome of Houston's trial would have been different, or even if it would have been different. Dr. Krane actually states in his

declaration that, without having seen the raw DNA data, he could not speak to the specifics of this case. Houston is required to show that there is a reasonable probability that, but for counsel's conduct, the result of the proceeding would have been different. Houston provides examples of both how cross-examination of the state's DNA expert could have been more incisive, and the kinds of information about DNA evidence that his own expert could have provided. Neither of these establishes a reasonable probability that the result of his trial would have been different. Therefore, we cannot conclude that the trial court abused its discretion in denying Houston's petition where he failed to provide sufficient operable facts showing that he received ineffective assistance of counsel.

{¶ 15} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

RAYMOND C. HEADEN, JUDGE

KATHLEEN ANN KEOUGH, J., CONCURS;
MARY J. BOYLE, P.J., CONCURS IN JUDGMENT ONLY