CITY OF CLEVELAND, Appellee,

v.

John P. WELMS, Appellant.

[Cite as *Cleveland v. Welms*, 169 Ohio App.3d 600, 2006-Ohio-6441.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 87758.

Decided Dec. 7, 2006.

Robert J. Triozzi, Cleveland Director of Law, and Angela Rodriguez, Assistant City Prosecutor, for appellee.

Paris & Paris and Tasso E. Paris, for appellant.

CHRISTINE T. MCMONAGLE, Judge.

{¶ 1} Defendant-appellant, John P. Welms, appeals his assault conviction. For the reasons that follow, we affirm.

{¶ 2} Plaintiff-appellee, the city of Cleveland, filed a complaint against appellant, charging him with one count of assault, a misdemeanor of the first degree in violation of Cleveland Codified Ordinances 621.03. Appellant waived his right to a jury trial. After a bench trial, the court found appellant guilty. He was sentenced to two years of community control and ordered to pay restitution for the complaining witness's medical treatment.

{¶ 3} The events that gave rise to the charge occurred at Cloud 9, a nightclub in the city of Cleveland. At trial, two witnesses testified on behalf of the city. Stacey Rossi, a bartender at Cloud 9, testified that she was sitting in the club having cocktails [1] when she observed appellant and the complaining witness,

---

1. Rossi explained that she was scheduled to work, but never worked that evening because, as was the club's practice, employees were not always required to work if it was not busy and the club had the necessary coverage.

Kenneth Stock, arguing. Rossi testified that she observed appellant punch Stock in the face. Rossi described Stock as trying to get up after appellant had hit him, but falling down. According to Rossi, a crowd congregated around Stock, who was on the floor, with some of the members of the crowd on top of him. Rossi "assumed" that appellant was one of the people on top of Stock; she did not actually observe that.

{¶ 4} Rossi also testified that after the altercation, Stock's eye was swollen and he had a "big lump on his head."

{¶ 5} The second witness for the city was Stock. Stock testified that he was at the club and observed appellant. Stock and appellant had previously been introduced to each other by a mutual acquaintance and had an unresolved "misunderstanding." Stock testified that in hopes of resolving their misunderstanding, he approached appellant. Stock and appellant began to argue, however, and appellant pushed Stock, sending him "flying backwards." Stock explained that once he got up, he approached appellant with a clenched fist. Stock testified that appellant hit him, causing Stock to fall to the ground. While on the ground, Stock felt people kicking and hitting him. Stock testified that appellant was on top of him, and when the altercation was broken up by the club's bouncers, appellant was one of the people the bouncers removed from on top of him.

{¶ 6} Stock testified that after the altercation, he left Cloud 9 and went to a friend's house. Stock explained that the following day he went to the hospital because he could not open his mouth and had blurred vision and a bad headache. Stock testified that he was diagnosed with a fractured jaw. Stock also testified that he returned to the hospital because he needed stronger pain medication in order to eat. Six photographs depicting Stock's injuries were admitted into evidence.[2]

{¶ 7} Stock denied threatening appellant. Stock also denied throwing a glass at appellant, as appellant and two witnesses claimed.

{¶ 8} At the conclusion of the city's case, the defense made a Crim.R. 29 motion for acquittal, which was denied. The defense then presented witnesses on its behalf.

{¶ 9} The first defense witness, Paulo Formichelli, went to Cloud 9 with appellant. Formichelli testified that on a prior occasion, appellant had him listen to voicemail messages left by Stock for appellant. Formichelli described Stock's tone in the voicemail messages as angry.

{¶ 10} Formichelli testified that upon arriving at Cloud 9, he went to another part of the club from where appellant was and did not observe the altercation

---

2. The photographs, however, were not made a part of the record for our review.

between appellant and Stock. Formichelli went back to the portion of the club where appellant was after the altercation had ended and observed employees of the club sweeping up glass. Formichelli was unaware of how the glass was broken, though.

{¶ 11} The second defense witness, Anthony DeBaltzo, described Stock approaching appellant and being "aggressive, in his face[,]" and "pushing, pointing at him." In particular, DeBaltzo described Stock as pushing his finger into appellant's chest. DeBaltzo testified that appellant pushed Stock back "to get him out of his space[,]" and that Stock then threw a glass aimed in appellant's direction. After throwing the glass, Stock "charged" appellant, and appellant punched Stock, causing Stock to fall back. DeBaltzo testified that no one was on top of Stock. Later that evening, DeBaltzo saw Stock at another club.

{¶ 12} Eric Loomis was the third defense witness. Loomis testified that he observed appellant and Stock exchange words, and saw Stock "[get] in [appellant's] face." Loomis testified to the following sequence of events: appellant pushed Stock away; Stock threw a glass, hitting a wall; Stock charged appellant; and appellant hit Stock, who fell to the ground. Loomis testified that Stock "got up real quick" and no one was on the floor with him. Loomis testified that he also saw Stock later in the evening at the same club where DeBaltzo testified to seeing him.

{¶ 13} Appellant was the final witness for the defense's case. Appellant testified that Stock approached him in Cloud 9 and wanted to talk to him about their misunderstanding. Appellant testified that while Stock was talking to him, Stock became enraged, and swore and poked at him. Appellant testified that he then pushed Stock, who fell down. Appellant testified that he screamed to Stock to "[s]tay the 'f' away from me." Stock then picked up a glass and threw it at appellant and ran after him. Appellant punched Stock in the face, because, as he explained, Stock was "[r]unning at me, coming after he threw the rock glass at me. He wasn't coming to shake my hand."

{¶ 14} Appellant's sole assignment of error is as follows:

{¶ 15} "The trial court erred in finding the appellant guilty of assault because the conviction was against the manifest weight of the evidence as appellant proved by a preponderance of evidence that appellant was acting in self-defense."

{¶ 16} In a bench trial, the trial court assumes the fact-finding function of the jury. Accordingly, to warrant reversal from a bench trial under a manifest weight of the evidence claim, this court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in evidence, the trial court clearly lost its way and created such a manifest miscarriage of justice that the judgment must

be reversed and a new trial ordered. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541; *Brooklyn v. Nova,* Cuyahoga App. No. 83550, 2004-Ohio-3610, 2004 WL 1532201.

{¶ 17} Cleveland Codified Ordinances 621.03 governs assault and provides as follows:

{¶ 18} "(a) No person shall knowingly cause or attempt to cause physical harm to another."

{¶ 19} To prevail on a nondeadly-force affirmative defense, one must show by a preponderance of the evidence that (1) he was not at fault in creating the situation, (2) he reasonably believed that some force was necessary to defend himself against the imminent use of unlawful force, and (3) the force used was not likely to cause death or great bodily harm. *Columbus v. Dawson* (1986), 33 Ohio App.3d 141, 142, 514 N.E.2d 908. Under Ohio law, there is no duty to retreat, even if it is possible to do so, before using nondeadly force in self-defense. *Id.*

{¶ 20} In his assignment of error, appellant argues that the trial court "completely ignored the evidence of the affirmative defense of self defense and gave great weight to the flawed testimony of the alleged victim." We disagree.

{¶ 21} The record in this case supports a finding that appellant was at fault for creating the altercation between himself and Stock. Stock testified that the initial physical contact between him and appellant occurred when appellant pushed him. Loomis, who testified for the defense, described the initial physical contact between appellant and Stock as occurring when appellant pushed Stock away after Stock "got in [appellant's] face."

{¶ 22} DeBaltzo, who testified for the defense, described Stock as pointing and pushing his finger into appellant's chest, and appellant then pushing Stock back "to get him out of his space." Stock also described appellant as poking at him.

{¶ 23} Thus, out of the four witnesses who testified to the initial moments of the altercation,[3] two described Stock poking appellant, and two described the initial physical contact between appellant and Stock as occurring when appellant pushed Stock. Based on that testimony, the trier of fact could have reasonably concluded that the physical altercation resulted from appellant pushing Stock to the ground. Moreover, the trial court could have reasonably concluded that Stock's poking appellant did not constitute an attack on appellant.

---

**3.** Rossi testified that she initially "wasn't really paying too much attention because * * * people do that [get in arguments] all the time at clubs." Formichelli testified that he was in another portion of the club when the altercation occurred and did not observe any of it.

{¶ 24} Thus, upon review of the record, we cannot conclude that the trial court clearly lost its way and created a manifest miscarriage of justice.

{¶ 25} Moreover, our view is not changed by the inconsistencies (whether the club was crowded and whether Stock threw a glass in appellant's direction) in the witnesses' testimonies. Whether the club was crowded is irrelevant in this case. Further, regardless of whether the testimony relative to Stock throwing a glass was believed or disbelieved, it does not change the fact, as admitted by appellant, that prior to the alleged glass-throwing incident, appellant pushed Stock with enough force to knock him to the ground. As previously discussed, appellant's action in pushing Stock to the ground could reasonably support the conclusion that appellant was the aggressor.

{¶ 26} We also find appellant's argument that the trial court gave too much weight to Rossi's testimony unpersuasive. Appellant argues that "[Rossi's] judgment was impaired by alcohol" and, thus, she was only able to "assume" facts. In regard to the effect of Rossi's alcohol consumption, there is no evidence in the record to indicate that Rossi was intoxicated. When Rossi was asked if she was drunk, she responded "no."

{¶ 27} In regard to the assumption made by Rossi (i.e., that appellant must have been in the group who Rossi testified was piled on top of Stock), it is important to note that this was a bench, not a jury, trial. We review a judge's decision on whether to admit evidence for abuse of discretion, *McClintock v. Fluellen*, Cuyahoga App. No. 82795, 2004-Ohio-58, 2004 WL 35782, at ¶ 26, and we give further deference to a judge's decision when the evidence is introduced in a bench trial. *State v. Fautenberry* (1995), 72 Ohio St.3d 435, 439, 650 N.E.2d 878. Unless the record indicates otherwise, the judge is presumed to have considered only admissible evidence. Id. There is no indication from this record that the trial judge considered Rossi's assumption. Moreover, the piling on top of Stock occurred, if at all, at the conclusion of the fray, after appellant had pushed and punched Stock.

{¶ 28} Appellant's final argument relates to the lack of medical evidence at trial. The city did not introduce Stock's medical record from his treatment into evidence, as the city did not have a certified copy of it. There was testimony at trial, however, regarding Stock's injuries. In particular, Rossi testified that after the altercation, Stock's eye was swollen and he had a "big lump on his head." Stock also testified that the following day he went to the hospital because he could not open his mouth and had blurred vision and a bad headache. Stock testified that he was diagnosed with a fractured jaw. Further, Stock explained that he returned to the hospital to obtain stronger pain medication because he

was having difficulty eating. This testimony was sufficient to demonstrate that Stock suffered physical harm.

**■** {¶ 29} In regard to the court's order of restitution based upon Stock's injuries, we first note that appellant has failed to make the sentencing hearing, at which restitution was ordered, part of the record for our review. Thus, we are unable to determine whether appellant objected to the specific amount and must presume the regularity of the proceeding. See *Knapp v. Edwards Laboratories* (1980), 61 Ohio St.2d 197, 199, 15 O.O.3d 218, 400 N.E.2d 384.

**■** {¶ 30} We are able to determine from a review of the record, though, that appellant's attorney, prior to sentencing, "requested motion to provide itemized bills/invoices of all medical records pertaining to injuries from the assault." Appellant's counsel further represented that "a stipulation regarding the amount of restitution will be available for the date of sentencing." We are also able to determine that in ordering restitution, the court considered the medical records from Fairview Health System relative to Stock's injuries. Thus, to the extent that appellant's argument is that the court erred by ordering restitution, appellant waived that argument.

{¶ 31} Based upon the aforementioned, appellant's assignment of error is overruled.

Judgment affirmed.

CORRIGAN, J., concurs.

GALLAGHER, P.J., dissents.

MICHAEL J. CORRIGAN, J., retired, of the Eighth District Court of Appeals, sitting by assignment.

SEAN C. GALLAGHER, Presiding Judge, dissenting.

{¶ 32} I respectfully dissent from the majority's conclusion that appellant was at fault in creating the situation. Under Ohio law, in order for a defendant to establish self-defense involving the use of nondeadly force, he must prove by a *preponderance* of the evidence (1) that the defendant was not at fault in *creating the situation giving rise to the altercation* and (2) that he had reasonable grounds to believe and an honest belief, even though mistaken, that he was in imminent danger of bodily harm and that his only means to protect himself from such danger was by the use of force not likely to cause death or great bodily harm. See 4 Ohio Jury Instructions (2000), Section 411.33; *State v. Fritz,* 163 Ohio App.3d 276, 2005-Ohio-4736, 837 N.E.2d 823. There is no duty to retreat when

nondeadly force is employed. *State v. Marbury*, Montgomery App. No. 19226, 2004-Ohio-1817, 2004 WL 758404.

{¶ 33} I would not interpret the law on self-defense as narrowly as does the majority and the trial court. I believe that appellant established by a preponderance of the evidence that Stock, and not appellant, was at fault in *creating the situation* that gave rise to the altercation. DeBaltzo, Loomis, and appellant testified that Stock approached appellant and was aggressive and "in his face." Stock himself corroborated the fact that *he* approached the appellant and they started to argue. Rossi, a witness for the city, also testified that the two were arguing. Stock created the situation that gave rise to the altercation.

{¶ 34} I would reverse the appellant's conviction as being against the manifest weight of the evidence.