JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Odie Anderson ("Anderson"), appeals his conviction for aggravated robbery and kidnapping. Finding no merit to the appeal, we affirm.
 {¶ 2} In July 2007, Anderson was charged in a fifteen-count indictment, eleven of which were charged to him.[1] Counts one and two charged him with aggravated robbery, and counts three and four charged him with kidnapping. He was also charged with grand theft of a motor vehicle, obstruction of official business, resisting arrest, two counts of theft, and two counts of receiving stolen property. *Page 2 
 {¶ 3} The matter proceeded to a bench trial, at which Anderson was found guilty of aggravated robbery (count one), kidnapping (count three), grand theft of a motor vehicle, receiving stolen property, and theft.[2] Anderson was sentenced to an aggregate of seven years in prison. He was sentenced to a six-year term for the aggravated robbery and kidnapping charges and one-year terms for the grand theft of a motor vehicle, receiving stolen property and theft charges. The three one-year terms were ordered to be served concurrent with one another and consecutive to the six-year term on the aggravated robbery and kidnapping charges. The following evidence was presented at trial.
 {¶ 4} In June 2007, the victim, Clarence Wesley ("Wesley"), was painting a home in Shaker Heights. While he was painting, Anderson approached him and asked to help with the work because he needed money. Wesley agreed to allow him to assist with the removal of an antenna from the roof. There is a dispute in the testimony as to what happened next.
 {¶ 5} Wesley testified that he paid Anderson $20 for removing the antenna. He obtained the money from his wallet, which was in the trunk of his car. Anderson left after getting paid, but later returned to ask for more work. *Page 3 
Wesley told Anderson that he would pay him $15 per hour to scrape two posts at the front of the house. Anderson worked on the posts, was paid $15 by Wesley, and then left. Wesley testified that Anderson came back a third time to ask for work. Wesley had no more work that day, but agreed to give Anderson a ride to the nearby RTA rapid station on Van Aken Boulevard ("Van Aken"). As they approached the rapid station, Anderson requested that he be dropped off at the next station instead. As they were driving, Anderson pulled out a knife and demanded that Wesley give him his money or he would kill him. Afraid for his life, Wesley put the car in park and jumped out. Anderson then drove off in Wesley's vehicle. Wesley stated that a group of people who observed the incident gave him a ride to a nearby store, where the police were contacted.
 {¶ 6} Anderson testified in his own defense. His testimony does not comport with Wesley's. He claimed that he saw Wesley working outside and asked if he could help paint for the day. Wesley told him that he would give him $20 per hour to help him with work around the house. Anderson first helped remove the antenna and then painted a portion of the house and scraped and sanded the front posts.
 {¶ 7} At the end of the workday, they left together in Wesley's car to purchase crack cocaine.[3] They drove to the Kappa House on East 124th Street, *Page 4 
where Anderson purchased an "eight ball" of crack cocaine with Wesley's money. They smoked the crack cocaine in the car as Wesley drove to Shaker Square. Anderson claimed that Wesley began to act paranoid because of the number of people and cars at the intersection. Anderson then asked Wesley for his wages for the day. Wesley told Anderson that their sharing the crack cocaine and the $50 service fee to obtain the drugs was sufficient payment. Anderson wanted his money so he reached over and grabbed Wesley's wallet. Wesley then got out of the car and yelled for help. Anderson moved into the driver's seat and drove away with Wesley's car, leaving him behind. Anderson returned to the scene approximately ten minutes later to look for Wesley. He could not find him so he returned Wesley's car to the Kappa House parking lot where they had purchased the drugs.
 {¶ 8} The Shaker Heights police apprehended Anderson three days later as he walked with Childress on East 126th Street. Anderson began to flee when the police approached him, so the police used a K-9 dog to prevent Anderson from running away. The police found Wesley's driver's license and library card *Page 5 
in Anderson's pocket. They also found a folding knife with a blue handle in Childress' purse.
 {¶ 9} Anderson appeals, raising one assignment of error, in which he argues that the trial court erred in convicting him of aggravated robbery and kidnapping because the verdict was against the manifest weight of the evidence.
 {¶ 10} In evaluating a challenge to the verdict based on the manifest weight of the evidence in a bench trial, "the trial court assumes the fact-finding function of the jury. Accordingly, to warrant reversal from a bench trial under a manifest weight of the evidence claim, this court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in evidence, the trial court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." Cleveland v. Welms,169 Ohio App.3d 600, 2006-Ohio-6441, 863 N.E.2d 1125, citing State v.Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541. As theThompkins Court declared:
 "Weight of the evidence concerns `the inclination of the greater amount of credible evidence offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' * * * *Page 6 
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."
 {¶ 11} In State v. Bruno, Cuyahoga App. No. 84883, 2005-Ohio-1862, we stated that the court must be mindful that the weight of the evidence and the credibility of witnesses are matters primarily for the trier of fact. A reviewing court will not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the prosecution proved the offense beyond a reasonable doubt. State v.DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus; State v. Eley (1978), 56 Ohio St.2d 169, 383 N.E.2d 132. Moreover, in reviewing a claim that a conviction is against the manifest weight of the evidence, the conviction cannot be reversed unless it is obvious that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Garrow (1995), 103 Ohio App.3d 368,659 N.E.2d 814.
 {¶ 12} Anderson does not dispute the elements of the robbery. He contends, however, that the State failed to prove that he possessed a deadly weapon (knife) during the commission of the robbery. *Page 7 
 {¶ 13} In order to be found guilty of aggravated robbery under R.C. 2911.01(A)(3), the State must prove that Anderson had a deadly weapon on or about his person or under his control and either displayed the weapon, brandished it, indicated that he possessed it, or used it during the commission of a theft offense.
 {¶ 14} He argues that Wesley's lack of credibility casts doubt on his testimony that Anderson used a knife. Furthermore, he states that when the police apprehended him, they did not find a knife in his possession. However, we note that the State is not required to produce the deadly weapon in order to obtain a conviction for aggravated robbery. SeeState v. Vondenberg (1980), 61 Ohio St.2d 285, 401 N.E. 2d 437;State v. Price (1989), 52 Ohio App.3d 49, 556 N.E.2d 1200. "To do so would emasculate R.C. 2911.01, and reward those armed robbers who have the fortune to escape the scene of the crime, and the foresight to destroy or conceal the weapons before they are apprehended."Vondenberg.
 {¶ 15} Anderson also argues that the State failed to prove beyond a reasonable doubt that he kidnapped Wesley under R.C. 2905.01(A)(2) and/or (3), which provides that:
 "(A) No person, by force, threat, or deception, * * * by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes: * * * *Page 8 
 "(2) To facilitate the commission of any felony or flight thereafter;
 "(3) To terrorize, or to inflict serious physical harm on the victim or another * * *."
 {¶ 16} He maintains that the State failed to prove that he deceived Wesley into driving to the RTA station to steal his wallet and car. He also maintains that the State failed to prove that he used a knife in the commission of the kidnapping.
 {¶ 17} In the instant case, a review of the record reveals that when Wesley paid Anderson for removing the antenna, Anderson saw Wesley's wallet, which had $500 in it. Wesley stated that at the end of the workday, he agreed to give Anderson a ride to the RTA rapid station at Van Aken. When they arrived at the rapid station, Anderson instructed Wesley to drop him off at the next stop. Wesley told Anderson that he had something else to do, so when they crossed over Van Aken, he would have to get out of the car. After they crossed Van Aken, Anderson pulled a knife on Wesley and told him to "give me my GD bills or I will kill your F'ing ass." Wesley got out of the car in fear for his life, and Anderson drove off in Wesley's car. The police found Anderson three days later with Wesley's driver's license and library card in his pocket.
 {¶ 18} We note that the trial court, as the trier of fact, is free to accept or reject all or any part of the testimony of the witnesses and assess the credibility of those witnesses. Although both parties could be found to lack credibility in *Page 9 
that their testimony conflicts considerably, the trial court, as the trier of fact in the instant case, weighed all evidence and reasonable inferences and found Wesley to be a more credible witness. See State v.Wilson, Cuyahoga App. No. 88289, 2007-Ohio-2373. Thus, we find that the trial court did not "lose its way," and Anderson's convictions are supported by the weight of the evidence.
 {¶ 19} Accordingly, the sole assignment of error is overruled.
Judgment is affirmed.
It is ordered that appellee recover of appellant the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MELODY J. STEWART, J., and MARY J. BOYLE, J., CONCUR
[1] The remaining four counts belong to co-defendant, Rayna Childress ("Childress").
[2] At trial, the court dismissed the obstruction of official business and resisting arrest charges pursuant to Anderson's Crim. R. 29 motion.
[3] Anderson testified that earlier in the day Wesley asked him if he knew "where any good crack was." *Page 1