[Cite as *State v. Jackson*, 2018-Ohio-3492.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 103957**

---

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**DEMETRIUS JACKSON**

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-15-598188-A

**BEFORE:** E.A. Gallagher, A.J., Boyle, J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** August 30, 2018

**ATTORNEY FOR APPELLANT**

Jonathan N. Garver
The Brownhoist Building
4403 St. Clair Avenue
Cleveland, Ohio 44103


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
BY: Sherrie S. Royster
        Anthony Thomas Miranda
Assistant Prosecuting Attorneys
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

EILEEN A. GALLAGHER, A.J.:

{¶1} This cause is before this court on remand from the Ohio Supreme Court in *State v.Jackson*, Slip Opinion No. 2018-Ohio-2169, for further review of our decision released December 15, 2016. The Ohio Supreme Court, having reversed our judgment in this case which was based on the Fifth and Sixth Amendments to the United States Constitution, has remanded it to us with instructions to consider Jackson's second and third assignments of error.

{¶2} Defendant-appellant Demetrius Jackson appeals his convictions for rape, gross sexual imposition and kidnapping in the Cuyahoga County Court of Common Pleas. For the following reasons, we affirm as to those assignments of error.

**Factual and Procedural Background**

{¶3} Appellant was charged by a Cuyahoga County Grand Jury with three counts of rape, gross sexual imposition, importuning with a prior conviction for a sexually or child victim oriented offense, felonious assault and kidnapping with a sexual motivation specification. Each of these crimes were alleged to have been committed against a 14-year old female ("C.H.").

{¶4} The case proceeded to a bench trial where C.H. testified that, on August 5, 2015, she went to an older sister's home in Cleveland, Ohio and was interacting with her young relatives while two of her sisters were on the porch drinking with the appellant. C.H. testified that she did not know the appellant and that both of her sisters were intoxicated. Later that night, the occupant of the home, C.H.'s sister N.J.,[1] told C.H. to go upstairs and lay down with N.J.'s two children, ages 7 and 1. C.H. had fallen asleep in a bedroom with the two children and was awakened by the appellant who told her that her sister, S.H., had told him to come lay with her. C.H. rebuffed his advances and told him to leave the room, which he did, and after which he

went downstairs but returned and repeated that her sister told him to go upstairs and lay with her. C.H. herself went downstairs, as did the appellant, and found both of her sisters to be asleep on a couch. At that point the appellant laid himself on the living room floor and C.H. returned upstairs to a bedroom.

{¶5} C.H. testified that appellant returned to the upstairs bedroom and asked her to allow him to perform oral sex on her. When she refused, appellant stated "I'll give you $200 a week if you don't say anything." Appellant then "ripped" C.H.'s underwear off of her, proceeded to perform oral sex on her and when she resisted, he choked her and said "let me just do this." The appellant then inserted his fingers, and later his penis, into her vagina.

{¶6} At some point appellant stopped his assault which gave C.H. an opportunity to grab her cellular telephone from a windowsill and run, without shoes or underwear, to a family member's home approximately eight houses away and from where Cleveland police were called. C.H. was transported to University Hospitals by EMS where she was examined, treated and released.

{¶7} N.J., the occupant of the home where these events transpired, testified that on the night in question, her sister S.H. brought appellant to the house after she went to the store to purchase alcohol. N.J. testified that she had fallen asleep and was awakened, on the couch, by her brother-in-law, K.F., who informed her that C.H. was at his home down the street and that she had been raped. N.J. went to the house of K.F. where she found the victim "hysterically crying . . . she was screaming 'he raped me, he raped me. . .'"

{¶8} Kathleen Hackett, the sexual assault nurse examiner who interacted and examined C.H. at U.H. Rainbow Babies and Children's Hospital read the victim's own words from the

---

[1]N.J. identified herself as the victim's "god-sister."

triage notes that echoed C.H.'s testimony but for the fact that C.H. did not report to her any digital penetration. The nurse noted a mark on C.H.'s neck.

{¶9} Laura Evans, a DNA analyst at the Cuyahoga County Medical Examiner's Office testified that testing of the victim's vaginal swabs revealed the presence of seminal material but no DNA profile foreign to the victim was found. The DNA analyst testified that sometimes the victim's DNA can mask another person's DNA. She testified that Jackson could not be excluded as a possible contributor to the DNA profile from a dried stain from the victim's left ear. She further testified that testing done of the penile swabs taken from Jackson could not exclude C.H. as a possible contributor.

{¶10} Appellant testified on his own behalf. He testified, however, only because the court admitted the testimony concerning what was allegedly said to the child advocate, over objection. Appellant claimed that the sexual activity with the victim was consensual. He maintained that he had only a "few swigs" of alcohol and smoked two blunts of marijuana on the night in question. He testified that everyone, including the victim, was drinking and that he thought the victim was at least 18 years old. He testified that the victim started kissing him, that they performed oral sex on each other and that the victim asked him to pay her for same. He denied choking the victim or in penetrating her in any fashion. He also testified to the limited mobility of his right arm.

{¶11} At the close of the state's case the trial court dismissed the importuning and felonious assault charges. The trial court found appellant guilty of two counts of rape, gross sexual imposition and kidnapping with a sexual motivation specification. The trial court found appellant not guilty of the third count of rape (cunnilingus).

**{¶12}** The trial court found the kidnapping count to be an allied offense to the rape and gross sexual imposition counts and merged the kidnapping count with those offenses. The state elected to proceed to sentencing on the two rape counts and the kidnapping count. The trial court imposed prison terms of 11 years on each of the three counts and ordered the sentences to run concurrently.

**Law and Analysis**

**I. Hearsay**

**{¶13}** In his second assignment of error, Jackson argues that he was denied his Sixth Amendment right to be confronted with the witnesses against him when the state introduced an alleged hearsay statement through the testimony of Cleveland police officer Louis Adipietro. Adipietro testified that he responded to the scene and that C.H. told him, "I was raped."

**{¶14}** Hearsay is "a statement, other than one made by the declarant while testifying . . . offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). But if a statement is offered for another purpose, then it is not hearsay and is admissible. *State v. Osie*, 140 Ohio St.3d 131, 2014-Ohio-2966, 16 N.E.3d 588, ¶ 118.

**{¶15}** "Law-enforcement officers may testify to out-of-court statements for the nonhearsay purpose of explaining the next investigatory step." *State v. Beasley*, Slip Opinion No. 2018-Ohio-493, ¶ 172, citing *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 186. Testimony to explain police conduct is admissible as nonhearsay if it satisfies three criteria: (1) the conduct to be explained is relevant, equivocal, and contemporaneous with the statements, (2) the probative value of the statements is not substantially outweighed by the danger of unfair prejudice, and (3) the statements do not connect the accused with the crime charged. *Id*., citing *State v. Ricks*, 136 Ohio St.3d 356, 2013-Ohio-3712, 995 N.E.2d 1181, ¶ 27.

**{¶16}** The testimony in this instance satisfies the standard of *Ricks*. Officer Adipietro was describing his interaction with C.H. when he arrived on scene solely as context for his subsequent investigatory steps and C.H.'s statement did not implicate Jackson. Therefore, the statement was nonhearsay and did not violate the Confrontation Clause. *Id*. at ¶ 175, citing *McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, at ¶ 186.

**{¶17}** Furthermore, even if the statement had not been admissible under *Ricks*, any error would be harmless in this instance. First, this case was tried to the bench and despite overruling the objection the trial court stated that it would not consider the statement as evidence to establish that C.H. was raped. Secondly, C.H. testified at trial that she was raped. When a hearsay declarant is examined at trial "on the same matters as contained in impermissible hearsay statements and where admission is essentially cumulative, such admission is harmless." *State v. Tucker*, 8th Dist. Cuyahoga No. 83419, 2004-Ohio-5380, ¶ 78, citing *State v. Tomlinson*, 33 Ohio App.3d 278, 281, 515 N.E.2d 963 (12th Dist.1986); *State v. Shropshire*, 8th Dist. Cuyahoga No. 104775, 2017-Ohio-8308, ¶ 26.

**{¶18}** Jackson's second assignment of error is overruled.

**II. Manifest Weight**

**{¶19}** In his third assignment of error, Jackson argues that his convictions are against the manifest weight of the evidence.

**{¶20}** A manifest weight challenge attacks the credibility of the evidence presented and questions whether the state met its burden of persuasion at trial. *State v. Whitsett*, 8th Dist. Cuyahoga No. 101182, 2014-Ohio-4933, ¶ 26, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541; *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 13. Because it is a broader review, a reviewing court may determine that a

judgment of a trial court is sustained by sufficient evidence but nevertheless conclude that the judgment is against the weight of the evidence.

{¶21} In evaluating a challenge to the verdict based on the manifest weight of the evidence in a bench trial,

[T]he trial court assumes the fact-finding function of the jury. Accordingly, to warrant reversal from a bench trial under a manifest weight of the evidence claim, this court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in evidence, the trial court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered.

*Cleveland v. Welms*, 169 Ohio App.3d 600, 2006-Ohio-6441, 863 N.E.2d 1125, ¶ 16 (8th Dist.), citing *Thompkins*.

{¶22} In conducting such a review, this court remains mindful that the credibility of witnesses and the weight of the evidence are matters primarily for the trier of fact to assess. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraphs one and two of the syllabus. Reversal on manifest weight grounds is reserved for the "exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983).

{¶23} Jackson argues that his convictions were against the manifest weight of the evidence because the convictions hinged on the credibility of C.H.'s account of the incident and because the investigating officers failed to collect C.H.'s underwear for examination. The trial court in this instance heard accounts of the incident from both C.H. and Jackson and concluded

that C.H.'s version of events "very credibly portrays a sexually assaulted 14-year-old." Conversely, the trial court did not find Jackson's story to be credible particularly in light of the C.H.'s flight from the scene following their encounter. The trial court also noted that Jackson's use of his right arm at trial was inconsistent with the defense's position he could not have used the arm as described by C.H. due to its limited mobility. The trial court was in the best position to judge the credibility of the witnesses in this instance. We cannot say that its judgment is against the manifest weight of the evidence.

{¶24} Jackson's third assignment of error is overruled.

{¶25} Judgment affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, ADMINISTRATIVE JUDGE

SEAN C. GALLAGHER, J., CONCURS IN JUDGMENT ONLY (WITH SEPARATE OPINION);
MARY J. BOYLE, J., CONCURS IN JUDGMENT ONLY AND CONCURS WITH SEPARATE OPINION

SEAN C. GALLAGHER, J., CONCURRING IN JUDGMENT ONLY:

{¶26} I concur in judgment only with the lead opinion because I believe the law enforcement officer's testimony that C.H. told him "I was raped" was hearsay. It is clear from the record that appellant was the suspect in the case. The testimony was introduced after the officer was questioned regarding what the victim meant when she indicated "it's my fault" while on the scene. The officer then testified that "[w]hile on the scene, she did say, 'I was raped.'" By implication, the statement was in reference to the incident between appellant and the victim, thereby connecting appellant to the crime charged. The testimony constituted inadmissible hearsay because it was offered to prove the truth of the matter asserted, rather than to explain police conduct. Nonetheless, I agree with the majority that any error was harmless because the trial court did not consider the statement as evidence that the victim was raped and the victim herself testified at trial that she had been raped. I also agree that appellant's convictions are not against the manifest weight of the evidence. Therefore, the trial court's judgment should be affirmed.