[Cite as *State v. Nelson*, 2022-Ohio-1665.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| v. | : | No. 110593 |
| GREGORY NELSON, JR., | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 19, 2022

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CR-19-645954-A and CR-19-646656-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and James Gallagher, Assistant Prosecuting
Attorney, *for appellee*.

Fred Middleton, *for appellant*.

JAMES A. BROGAN, J.:

{¶ 1} Defendant-appellant Gregory Nelson, Jr. ("Nelson") appeals from his convictions and sentence for felonious assault and other charges following a bench trial. For the reasons that follow, we affirm.

**Factual and Procedural History**

{¶ 2} On December 17, 2019, a Cuyahoga County Grand Jury indicted Nelson on various offenses in two separate cases stemming from three separate incidents in October and November 2019. In Cuyahoga C.P. No. CR-19-645954, Nelson was charged with two counts of discharge of firearm on or near prohibited premises in violation of R.C. 2923.162(A)(3), felonies of the third degree, both of which carried one- and three-year firearm specifications; five counts of aggravated menacing in violation of R.C. 2903.21(A), misdemeanors of the first degree; one count of felonious assault in violation of R.C. 2903.11(A)(2), a felony of the second degree, which carried one- and three-year firearm specifications; one count of criminal damaging or endangering in violation of R.C. 2909.06(A)(1), a misdemeanor of the first degree, with a furthermore specification; and one count of having weapons while under disability in violation of R.C. 2923.13(A)(2), a felony of the third degree.

{¶ 3} In Cuyahoga C.P. No. CR-19-646656, Nelson was charged with one count of felonious assault in violation of R.C. 2903.11(A)(2), a felony of the second degree, with one- and three-year firearm specifications; one count of assault in violation of R.C. 2903.13(A), a misdemeanor of the first degree with a pregnant victim specification; one count of abduction in violation of R.C. 2905.02(A)(2), a felony of the third degree; one count of aggravated menacing in violation of R.C. 2903.21(A); and one count of having weapons while under disability in violation of R.C. 2923.13(A)(2), a felony of the third degree.

{¶ 4} On February 9, 2021, Nelson waived his right to a jury trial. On March 2, 2021, the state moved to join the cases together for trial. Defense counsel did not object to the joinder motion, and the court granted the motion.

{¶ 5} On April 5, 2021, the case proceeded to a bench trial. The state called the victim Asia Sparks ("Sparks"), Sparks's mother Cinnamon Anderson ("Anderson"), Brenda Walkerly ("Walkerly"), and Detective James Januszewski ("Detective Januszewski").

{¶ 6} Sparks testified that she had known Nelson for four to five years and had been romantically involved with him for the duration of their relationship. The couple had one child together, a son who was born on May 18, 2020.

{¶ 7} Anderson, Sparks's mother, testified that on October 5, 2019, she was in bed at her home in Shaker Heights, Ohio. Around 2:00 or 3:00 a.m., she heard loud noises and came downstairs to find Sparks and Nelson. Anderson told Sparks that she should take Nelson home. According to Anderson, Sparks did not want to take Nelson home, so Anderson offered to drive Nelson to his grandmother's house in Cleveland, Ohio, where he was staying at the time. Anderson drove with Sparks and Nelson to Nelson's grandmother's house.

{¶ 8} Anderson testified that during the 15-minute car ride, she told Sparks that Sparks should not be drinking or smoking because she was pregnant. According to Anderson, Nelson was aware that Sparks was pregnant. Sparks denied this in her testimony, testifying that although she was pregnant during all three of

the incidents, Nelson did not learn that she was pregnant until after his arrest for these incidents.

{¶ 9} Anderson testified that Nelson seemed fairly calm during the ride, but as they got closer to his grandmother's house, he got increasingly agitated and raised his voice. Anderson testified that Nelson and Sparks were discussing an "incident" but Anderson did not know what this incident was. According to Anderson, when they arrived at Nelson's grandmother's house, Nelson "got out of the car and he just started shooting a gun." Anderson described Nelson shooting the gun up in the air and down the street, and she testified that he shot the gun approximately four times while standing in the middle of the street. In her initial statement to police, Anderson stated that Nelson fired twice in the air and twice in the ground.

{¶ 10} Sparks testified that Nelson had learned that she had cheated on him and he was mad. Sparks testified that when they arrived at Nelson's grandmother's house, Nelson got out of the vehicle and she and Anderson remained in the vehicle. Nelson fired a gun in the air. After Nelson fired his gun, Sparks told Anderson to drive away. Sparks testified that Anderson did not immediately drive away and Nelson was shouting angrily at her about cheating. Ultimately, Nelson went inside his grandmother's house and Sparks and Anderson drove home. Sparks did not call the police after this incident. Anderson testified that in the weeks following this incident, Nelson texted her apologizing for shooting his gun and scaring her. Anderson testified that she did not contact the police immediately after this incident

because she was scared and because she wanted to give Nelson "the benefit of the doubt."

{¶ 11} The second incident occurred several weeks later. Sparks had let Nelson borrow her car. Walkerly, who was dating Sparks's brother Anthony at the time, testified that on October 23, 2019, Sparks had spent the night at Walkerly's house. Walkerly testified that on October 24, Sparks was worried about going to get her car, so Walkerly, Sparks, and Anthony went to pick up the car from Nelson's grandmother's house. Walkerly testified that when they arrived at the house, Sparks and Anthony went inside with Nelson to retrieve Sparks's car keys, and Walkerly waited outside by her car, which was parked in front of Nelson's neighbor's house. Walkerly described Anthony, Sparks, and Nelson coming out of the house together. She testified that Anthony came over to her and Sparks and Nelson were arguing and walking towards Sparks's car, which was parked directly in front of Nelson's house. Walkerly testified that Sparks told her and Anthony to get in the car and go. Walkerly got in her car with Anthony and turned the car around so that she would be facing Sparks's driver side to communicate about where they were going next. According to Walkerly, Sparks drove off as Walkerly pulled her car around and that is when Nelson, standing in the middle of the street, pulled a gun out and shot first at the ground and then at Sparks's car. Walkerly testified that Nelson possibly fired a third shot before running after Sparks's car.

{¶ 12} Sparks testified that when they arrived at Nelson's grandmother's house, she asked Nelson if he was with another girl and he said no. Sparks testified

that she retrieved her car keys from him, got into her car, and was about to leave when she heard "loud sounds." The following exchange took place:

PROSECUTOR: Was there a firearm at that incident?

SPARKS: No.

PROSECUTOR: Okay.

SPARKS: I didn't see no firearm.

PROSECUTOR: Okay. Did you hear any shots?

SPARKS: No.

PROSECUTOR: You didn't hear any gunshots?

SPARKS: I heard gunshots. They told me that it was gunshots.

DEFENSE COUNSEL: Objection.

COURT: Sustained.

PROSECUTOR: So you heard loud sounds?

SPARKS: Yeah.

PROSECUTOR: And you testified —

SPARKS: Well, when I heard the shots I was on the next street.

PROSECUTOR: So you know what a gunshot is, right? What it sounds like?

SPARKS: Uh-huh.

PROSECUTOR: So you heard gunshots?

SPARKS: Yeah.

PROSECUTOR: But you just heard gunshots, you didn't see it?

SPARKS: I heard it, I didn't see it.

PROSECUTOR: That was right after you were talking to the defendant about who he was with?

SPARKS: Yeah.

Sparks went on to testify that she did not notice damage to her car, but she explained that a detective subsequently came to review damage to her car.

{¶ 13} Anderson testified that on October 24, 2019, Anthony and Walkerly came to Anderson's house, hysterical about what had just occurred. Anderson testified that Anthony described Nelson shooting at Sparks. Anderson filed a police report that day for both the October 5 and October 24 incidents.

{¶ 14} The third incident occurred on November 28, 2019. Sparks testified that it was her birthday that day and, after working all day, she went to see Nelson. She testified that they were relaxing when she brought up another man. According to Sparks, Nelson "brushed it off" but she "kept egging him on." Sparks testified that she hit Nelson and then they started fighting and hitting each other. Sparks testified that they fought over a period of several hours and, at one point, they drove to a nearby convenience store. The fighting continued while they were in the car. Sparks testified that she was bruised as a result of this fight and she ultimately reported the incident at Anderson's insistence. Sparks also went to the hospital to be treated for her injuries. At trial, Sparks testified that Nelson did not have a firearm during the fight, but she acknowledged in her trial testimony that she initially told the police and hospital personnel that Nelson had hit her in the head with a firearm. Similarly, Sparks testified that if she had wanted to leave at any point during the fight, she

could have, but she had initially told police that Nelson was holding her against her will because she was angry.

{¶ 15} Anderson testified at trial that on November 29, 2019, her husband came to her in the kitchen and informed her that Sparks was outside in an ambulance. Anderson testified that Sparks "looked very bad" and said that her hair was thinning and her face was swollen, and "it was terrible." Anderson testified that the ambulance transported Sparks to the hospital and Anderson picked her up from the hospital later that day. Anderson testified that the next day, she filed a police report

{¶ 16} Anderson went on to testify that she subsequently went with Sparks to pick up Sparks's car from the impound lot. Upon noticing a gun and drugs in the car, Anderson called the police.

{¶ 17} Detective Robert Januszewski ("Detective Januszewski") testified that upon being assigned this case, he spoke with Sparks and Anderson. He described Sparks as initially not being very cooperative, noting specifically that she was supposed to have a formal interview and did not show up. Ultimately, Detective Januszewski interviewed Sparks at her home. He also interviewed Anderson and subsequently took Walkerly's statement over the phone. Detective Januszewski testified that he also took a statement from Sparks's brother Anthony.[1] Detective

---

[1] Anthony did not testify at trial. Anderson testified that at the time of the trial, Anthony had been in Mexico for approximately six months and had not received a subpoena to appear as a witness at trial. Detective Januszewski's testimony corroborated this.

Januszewski testified that over the course of the case, Sparks had avoided his calls and had signed a no prosecution form. Detective Januszewski also testified that in the course of his investigation, he inspected Sparks's vehicle, saw a small hole in the right taillight, and intended to process the vehicle, but Sparks did not want her vehicle to be formally processed. Detective Januszewski testified that the small hole appeared to be a possible bullet hole.

{¶ 18} At the close of the state's case, Nelson's counsel made a Crim.R. 29 motion for acquittal. The court granted Nelson's motion as to one count of aggravated menacing against Anthony and denied the motion as to the remaining counts and specifications. Nelson did not call any witnesses or introduce evidence on his behalf. Defense counsel renewed his Crim.R. 29 motion, which the court denied.

{¶ 19} The court found Nelson guilty of two counts of discharging a firearm on or near prohibited premises, one count of aggravated menacing against Anderson, one count of felonious assault against Sparks, one count of criminal damaging or endangering, one count of aggravated menacing against Walkerly, two counts of having weapons while under disability, one count of assault against Sparks, and one count of aggravated menacing against Sparks, including the corresponding firearm specifications for these offenses.

{¶ 20} The court found Nelson not guilty of two counts of aggravated menacing against Sparks, one count of felonious assault against Sparks, and one count of abduction of Sparks, including the corresponding firearm specifications.

**{¶ 21}** On May 20, 2021, the court held a sentencing hearing. The assistant prosecuting attorney addressed the court, informing the court that Sparks had submitted a letter to the court asking for Nelson to receive the minimum sentence. The assistant prosecuting attorney went on to request a "mid-range" sentence. Anderson addressed the court and asked the court to impose a minimum sentence on Nelson and consider ordering anger management or other classes that might help with impulsive behavior. The court read Sparks's letter into the record. Finally, defense counsel addressed the court and requested a minimum sentence for Nelson. Defense counsel also objected to the application of the Reagan Tokes Law to the case.

**{¶ 22}** The court stated that it had reviewed the presentence investigation report, considered the written and oral statements made by the victims and the parties, and considered the principles and purposes of felony sentencing in R.C. 2929.11 and the sentencing factors in R.C. 2929.12. Ultimately, the court sentenced Nelson to a total aggregate sentence of 10 to 12 years.[2]

**{¶ 23}** Nelson appeals, presenting five assignments of error for our review:

---

[2] The court merged the one- and three-year firearm specifications on the two discharge of a firearm offenses and the felonious assault offenses, and the state elected to proceed with sentencing on the three-year firearm specification on those three counts. The court found that the three-year firearm specifications corresponding to the felonious assault and discharge of a firearm offenses that occurred on October 24, 2019 stemmed from the same transaction and merged those firearm specifications for sentencing. The court found that the remaining three-year firearm specification stemmed from a separate transaction. The court ordered both three-year firearm specifications to be served consecutive to the sentences on their respective underlying charges and consecutive to each other. Beyond that, the sentences for all counts were order to be served concurrently.

I. Appellant maintains the court improperly failed to exclude the testimony of the complaining witness when she denied any shots were fired at her in regard to the aggravated assault charges or criminal damaging charges.

II. Appellant maintains the court improperly denied the Crim.R. 29 motion to dismiss the charges of discharging of firearm on or near prohibited premises.

III. Appellant maintains the sentence imposed by the court under the Reagan Tokes Law is unconstitutional and the sentence should be set aside and a pre-S.B. 201 sentence imposed.

IV. The convictions are against the manifest weight of the evidence.

V. The court erred by ordering the sentences to be served consecutively, as the order was not supported by the R.C. 2929.14(C) factors, making it contrary to law.

**Legal Analysis**

**I. Sparks's Testimony**

{¶ 24} Nelson's first assignment of error asserts that the court's failure to exclude Sparks's testimony when she denied that any shots were fired at her was improper. Despite this framing, Nelson does not make any argument in support of this assertion. Under App.R. 16(A)(7), an appellant must set forth in his brief "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." Where a party raising an assignment of error "fails to identify in the record" the error on which a particular assignment of error is based or "fails to argue the assignment separately in the brief, as required under App.R.

16(A)," the court may disregard an assignment of error presented for review. App.R. 12(A)(2).

{¶ 25} Rather than present an argument in support of his evidentiary claim, Nelson argues that the nature of Sparks's testimony, which he characterizes as "indecisive," supports a conclusion that the elements of three of Nelson's charges were not proven beyond a reasonable doubt. This argument is not based on a lack of evidence, but rather what Nelson characterizes as inconsistent evidence. To the extent that Nelson's arguments in his first assignment of error challenge that his convictions were supported by sufficient evidence or were against the manifest weight of the evidence, they will be addressed in our discussion of Nelson's second and fourth assignments of error. Nelson's first assignment of error is overruled.

## II. Crim.R. 29 Motion

{¶ 26} In his second assignment of error, Nelson argues that the court improperly denied his Crim.R. 29 motion to dismiss the charges of discharge of a firearm on or near prohibited premises in violation of R.C. 2923.162(A)(3). Specifically, Nelson argues that Crim.R. 29(A) provides that a court "shall order the entry of the judgment of acquittal of one or more offenses * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." "Because a Crim.R. 29 motion questions the sufficiency of the evidence, '[w]e apply the same standard of review to Crim.R. 29 motions as we use in reviewing the sufficiency of the evidence.'" *Fairview Park v. Peah*, 8th Dist. Cuyahoga No. 110128, 2021-Ohio-

2685, ¶ 37, quoting *State v. Tenace,* 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37.

{¶ 27} A sufficiency challenge requires a court to determine whether the state has met its burden of production at trial and to consider not the credibility of the evidence but whether, if credible, the evidence presented would sustain a conviction. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991), citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶ 28} Nelson was convicted of two counts of discharge of a firearm on or near prohibited premises in violation of R.C. 2923.162(A)(3), with one count related to the October 5 incident and one count related to the October 24 incident. Pursuant to R.C. 2923.162(A)(3), the state was required to prove that Nelson discharged a firearm upon or over a public road or highway and the violation created a substantial risk of physical harm to any person or caused serious physical harm to property.

{¶ 29} With respect to the October 5 incident, testimony from Sparks and Anderson was presented that Nelson was on the street outside of his grandmother's house, he was angry, he had a firearm, and he pointed the firearm into the air and fired. Anderson specifically testified that Nelson was standing in the middle of the street and fired his gun down the street. With respect to the October 24 incident,

Walkerly testified that Nelson came out of the house, fired a gun toward the ground, and fired a gun at Sparks as she drove away down the street.  With respect to both incidents, witness testimony established that Nelson's grandmother's house is located on a public road, in a residential area in which the houses were located close together.  Finally, testimony from Detective Januszewski indicated that the damage to Sparks's car was likely a bullet hole.

{¶ 30} Viewing this evidence in the light most favorable to the state, any rational trier of fact could have found that the elements of R.C. 2923.162(A)(3) were proven beyond a reasonable doubt with respect to both the October 5 and October 24 incidents.  Therefore, the trial court properly denied Nelson's Crim.R. 29 motion as to those charges.  Nelson's second assignment of error is overruled.

### III. Reagan Tokes Law

{¶ 31} In third first assignment of error, Nelson argues that his sentence is invalid because it was imposed pursuant to Reagan Tokes, which violates the Ohio and United States Constitutions.  Specifically, Nelson argues that the law violates his right to a jury trial, violates his due process rights, and violates the separation-of-powers doctrine.  Nelson's arguments are overruled pursuant to this court's en banc decision in *State v. Delvallie*, 8th Dist. Cuyahoga No. 109315, 2022-Ohio-470, which overruled the challenges presented in this appeal to the Reagan Tokes Law enacted through S.B. 201.  Therefore, we find that Nelson's sentence pursuant to Reagan Tokes was not a violation of his constitutional rights.  Nelson's third assignment of error is overruled.

## IV. Manifest Weight

{¶ 32} In his fourth assignment of error, Nelson argues that his convictions are against the manifest weight of the evidence.

{¶ 33} Unlike a challenge to the sufficiency of the evidence, a manifest weight challenge attacks the quality of the evidence and questions whether the state met its burden of persuasion at trial. *State v. Hill*, 8th Dist. Cuyahoga No. 99819, 2014-Ohio-387, ¶ 25, citing *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 13. In our manifest weight review of a bench trial verdict, we recognize that the trial court is serving as the factfinder.

> "'Accordingly, to warrant reversal from a bench trial under a manifest weight of the evidence claim, this court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving conflicts in evidence, the trial court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered.'"

*State v. Bell*, 8th Dist. Cuyahoga No. 106842, 2019-Ohio-340, ¶ 41, quoting *State v. Strickland*, 183 Ohio App.3d 602, 2009-Ohio-3906, 918 N.E.2d 170, ¶ 25 (8th Dist.), quoting *Cleveland v. Welms*, 169 Ohio App.3d 600, 2006-Ohio-6441, 863 N.E.2d 1125 (8th Dist.), citing *Thompkins*, 78 Ohio St.3d 380 at 390, 678 N.E.2d 541.

{¶ 34} Nelson's primary argument in support of his manifest weight claim is that the evidence at trial, specifically Sparks's testimony, was inconsistent. Nelson points out that at trial, Sparks "admitted she lied" when she initially told police and hospital staff that Nelson hit her in the head with a firearm. We agree with Nelson

that Sparks's testimony was inconsistent; however, this does not warrant a conclusion that his convictions were against the manifest weight of the evidence.

{¶ 35} Nelson claims that there was no evidence of Sparks being hit in the head with a firearm. Nelson was convicted of two counts felonious assault in violation of R.C. 2903.11(A)(2), which required the state to prove that Nelson knowingly caused or attempted to cause physical harm to Sparks by means of a deadly weapon or dangerous ordnance in the form of a firearm. One count related to the October 24, 2019 incident, and one count related to the November 29, 2019 incident.

{¶ 36} With respect to the October 24 incident, the state presented evidence at trial, in the form of testimony from Sparks and Anderson, that Nelson was angry at Sparks, had a firearm, and fired it into the air and down the street. With respect to the November 29 incident, the state presented evidence at trial that Sparks and Nelson were arguing and fighting and Sparks ultimately went to the hospital, telling hospital staff that Nelson had struck her in the head with a firearm.

{¶ 37} Although Sparks's trial testimony differed from her earlier statements to the police, much of her trial testimony corroborated the version of events described by Anderson and Walkerly. Furthermore, the areas of Sparks's testimony that differed from her own earlier statements — such as her testimony that she did not see Nelson with a firearm, that she was not afraid of Nelson, and that Nelson did not hit her in the head with a firearm — are undermined by other evidence in the record. Anderson and Walkerly both testified that they saw Nelson with a firearm

and saw him shoot down the street and/or towards Sparks's vehicle on different occasions. Furthermore, a firearm that did not belong to Sparks was found in her vehicle, after she had allegedly been struck in the head with a firearm in the vehicle earlier that day.

{¶ 38} Finally, Sparks and Nelson had an ongoing romantic relationship and shared a child together and Sparks was hesitant to participate in and testify at Nelson's trial. While our review empowers us to weigh the evidence and all reasonable inferences and consider the credibility of witnesses, we are mindful that "the credibility of the witnesses and the weight to be given the evidence are primarily for the trier of fact to assess." *State v. Wiley*, 8th Dist. Cuyahoga No. 99576, 2014-Ohio-27, ¶ 70. The fact that Sparks described different behavior by Nelson at various points in time goes to her credibility, but her inconsistent testimony does not negate that she initially claimed that Nelson struck her in the head with a firearm.

{¶ 39} Having reviewed the entire record, we cannot conclude that the trial court clearly lost its way and created a manifest miscarriage of justice. Nelson's convictions were not against the manifest weight of the evidence. Therefore, Nelson's fourth assignment of error is overruled.

## V. Consecutive Sentences

{¶ 40} In his fifth and final assignment of error, Nelson argues that the court erred by ordering Nelson's sentences to be served consecutively because consecutive sentences were not supported by the R.C. 2929.14(C) factors. Nelson refers to the consecutive sentences imposed on Counts 1, 4, and 5 in Cuyahoga C.P. No. 19-

645954. Counts 1 and 5 were discharge of a firearm on or near prohibited premises and Count 4 was felonious assault. Each count carried one- and three-year firearm specifications. Following the merger of the one-year firearm specification into the three-year firearm specification on each count, and the merger of the firearm specifications for Counts 4 and 5, the court ordered that the two three-year firearm specifications were to be served consecutive to each other and consecutive to the sentences on their respective underlying offenses. The court did not otherwise impose consecutive sentences. It is unclear whether Nelson is challenging the court's order that the firearm specifications be served prior and consecutive to the sentence on their respective underlying offenses, or consecutive to each other, but in either case, Nelson's argument is not well-taken.

{¶ 41} R.C. 2929.14(C)(1)(a) provides that:

Subject to division (C)(1)(b) of this section, if a mandatory prison term is imposed upon an offender pursuant to division (B)(1)(a) of this section for having a firearm on or about the offender's person or under the offender's control while committing a felony, if a mandatory prison term is imposed upon an offender pursuant to division (B)(1)(c) of this section for committing a felony specified in that division by discharging a firearm from a motor vehicle, or if both types of mandatory prison terms are imposed, the offender shall serve any mandatory prison term imposed under either division consecutively to any other mandatory prison term imposed under either division or under division (B)(1)(d) of this section, consecutively to and prior to any prison term imposed for the underlying felony pursuant to division (A), (B)(2), or (B)(3) of this section or any other section of the Revised Code, and consecutively to any other prison term or mandatory prison term previously or subsequently imposed upon the offender.

{¶ 42} Therefore, the court properly ordered the sentences on the firearm specifications to be served consecutively to the underlying offenses and was not

required to make findings pursuant to R.C. 2929.14(C). *State v. Brown*, 8th Dist. Cuyahoga No. 102549, 2015-Ohio-4764, ¶ 16. Furthermore, the imposition of consecutive sentences for multiple firearm specifications is authorized by law as described in R.C. 2929.14(B)(1)(g):

> If an offender is convicted of or pleads guilty to two or more felonies, if one or more of those felonies are * * * felonious assault, * * * and if the offender is convicted of or pleads guilty to a specification of the type described under division (B)(1)(a) of this section in connection with two or more felonies, the sentencing court shall impose on the offender the prison term specified under division (B)(1)(a) of this section for each of the two most serious specifications of which the offender is convicted or to which the offender pleads guilty and, in its discretion, also may impose on the offender the prison term specified under that division for any or all of the remaining specifications.

Here, the trial court, as mandated by R.C. 2929.14(B)(1)(g), imposed consecutive sentences on the firearm specifications attendant to the felonious assault and discharge of a firearm on or near prohibited premises charges. We find no error by the trial court. *Id*., citing *State v. Vanderhorst*, 8th Dist. Cuyahoga No. 97242, 2013-Ohio-1785; *State v. Isreal*, 12th Dist. Warren No. CA2011-11-115, 2012-Ohio-4876 (trial court commits no error in imposing multiple consecutive sentences on firearm specifications). Finally, because the imposition of consecutive sentences for firearm specifications is mandatory under R.C. 2929.14(B)(1)(g), the trial court was not required to make R.C. 2929.14(C)(4) findings before imposing multiple and consecutive firearm specifications. *Id*., citing *State v. Young*, 8th Dist. Cuyahoga No. 102202, 2015-Ohio-2862, ¶ 7, 10. Accordingly, Nelson's fifth assignment of error is overruled.

**{¶ 43}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

JAMES A. BROGAN, JUDGE*

KATHLEEN ANN KEOUGH, P.J. and
MICHELLE J. SHEEHAN, J., CONCUR

(*Sitting by assignment: James A. Brogan, J., retired, of the Second District Court of Appeals.)